[Cite as *Twinsburg v. Wesby*, 2012-Ohio-569.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

CITY OF TWINSBURG

    Appellee

    v.

QUIANA WESBY

    Appellant

C.A. No.     25813

APPEAL FROM JUDGMENT
ENTERED IN THE
STOW MUNICIPAL COURT
COUNTY OF SUMMIT, OHIO
CASE No.    10 TRC 9680

DECISION AND JOURNAL ENTRY

Dated: February 15, 2012

MOORE, Judge.

{¶1}    Appellant, Quiana Wesby, appeals from her convictions in the Stow Municipal Court. This Court affirms.

I.

{¶2}    In the early morning hours of October 24, 2010, Quiana Wesby felt ill and left the home of her friend. While she was driving on State Route 82, Officer Dan Fidoe of the City of Twinsburg Police Department observed Wesby swerve over the lane markings. After initiating a traffic stop and performing certain sobriety tests, Officer Fidoe cited Wesby for operating a vehicle while impaired and for weaving, in violation of Twinsburg City Ordinances 333.01(a)(1)(A) and 341.34(b), respectively.

{¶3}    At trial, Wesby argued that her poor performance on the sobriety tests was not the result of alcohol consumption, but instead resulted from hyperglycemia due to her diabetes, from which she has suffered for twenty-four years. The trial court found Wesby guilty on both

charges and, among other sanctions, sentenced her to 30 days in jail, of which 27 days were suspended, and the remaining 3 days could be served by the completion of a 3-day driver intervention program.

{¶4}    Wesby timely filed a notice of appeal and presents one assignment of error for our review. Wesby filed a motion asking this Court to take judicial notice of certain medical articles pertaining to diabetes.

II.

{¶5}    As a preliminary matter, we will address Wesby's motion for judicial notice of certain articles that she purports were published by the National Institutes of Health pertaining to diabetes. Generally, an appellate court may take judicial notice of any fact of which the trial court could have taken notice, even where the trial court failed to do so. *See, e.g., Day v. Day*, 40 Ohio App.3d 155, 160 (10th Dist.1988), fn. 4.

{¶6}    In support of her request for this Court to take judicial notice of the facts within the articles that she has supplied, Wesby cites Evid.R. 201, which provides:

(A) Scope of rule

This rule governs only judicial notice of adjudicative facts; i.e., the facts of the case.

(B) Kinds of facts

A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

(C) When discretionary

A court may take judicial notice, whether requested or not.

(D) When mandatory

A court shall take judicial notice if requested by a party and supplied with the necessary information.

(E) Opportunity to be heard

A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.

(F) Time of taking notice

Judicial notice may be taken at any stage of the proceeding.

{¶7}   The Staff Notes to Evid.R. 201 provide that the rule, "in its entirety, reflects existing Ohio practice and, except for the added clarifying language to subdivision (A) which is not intended to result in a contrary construction, is identical to Federal Evidence Rule 201." 1980 Staff Note, Evid.R. 201.  The Advisory Committee Notes to Fed.R.Evid. 201 explain, "The usual method of establishing adjudicative facts is through the introduction of evidence, ordinarily consisting of the testimony of witnesses.  If particular facts are outside the area of reasonable controversy, this process is dispensed with as unnecessary. A high degree of indisputability is the essential prerequisite."  In accordance, a "judge may inform himself as to the facts of geography, such as the navigable character of a river, the distance between two points, or the location of a given place within the jurisdiction by resort to * * *  public documents, maps, etc." *State v. Burkhalter*, 6th Dist. No. L-05-1111, 2006-Ohio-1623, ¶ 18, quoting *State v. Scott*, 3 Ohio App.2d 239, 243 (7th Dist.1965).    Other facts, such as those of a scientific or medical nature, may be judicially noticed, so long as these facts meet the requirements of Evid.R. 201. *See* 1980 Staff Note, Evid.R. 201(B) ("The type of fact contemplated by 201(B)(2) includes scientific, historical and statistical data which can be verified and is beyond reasonable dispute.")  For example, scientific "theories that are so firmly established as to have attained the status of

scientific law, such as laws of thermodynamics, properly are subject to judicial notice * * *." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993), fn. 11.

{¶8} Within her request, Wesby essentially urges this Court to take judicial notice of the following "facts": (1) that goal blood glucose levels range between 80 and 120; (2) diabetic ketoacidosis is associated with blood glucose levels over 300 "and causes fruity breath, decreased consciousness and mental stupor," and (3) fruity breath caused by the presence of acetones is present in people suffering from diabetic ketoacidosis, which occurs when an individual is hyperglycemic."

{¶9} In support of these factual propositions, Wesby has provided three articles. The first article "If You Have Diabetes…Know Your Blood Sugar Numbers!" displays a publication number by the National Institutes of Health. This article provides advice regarding the monitoring of blood sugar levels by diabetics. Wesby contends that this article evidences that "goal blood-glucose levels [are] between 80 and 120." A review of the article demonstrates that this "fact" is not "capable of accurate and ready determination." *See* Evid.R. 201(B). The article sets forth that diabetics should "[s]et [their] goals with [their] health care team. Blood glucose goals for most people with diabetes when self-testing are on these charts." Two charts are provided, one for "plasma values" and one for "whole blood values." Each chart then contains two rows displaying values for "before meals" and "1 to 2 hours after meals." Thus, because of the variables involved, coupled with the article's admonition that goals should be set with an individual's personal healthcare provider and that the charts provide goals for "most" people, we conclude that the "fact" proposed by Wesby is not "capable of accurate and ready determination" under Evid.R. 201(B).

{¶10} The remaining two articles, "Diabetic Ketoacidosis" and "Breath Odor" set forth, in relevant portions, purported symptoms of diabetic ketoacidosis and causes of "fruity breath." These articles display their sources as "MedlinePlus" followed by "U.S. National Library of Medicine NIH National Institutes of Health." These articles were published by "A.D.A.M., Inc." and contain the following disclaimer, "The information provided herein should not be used during any medical emergency or for the diagnosis or treatment of any medical condition. A licensed physician should be consulted for diagnosis and treatment of any and all medical conditions." As to these articles, we cannot determine from the information that Wesby has provided whether the sources are such that the information contained therein "cannot reasonably be questioned," and, accordingly, we need not take judicial notice of the "facts" therein set forth. Evid.R. 201(D).

{¶11} Based upon the foregoing, this is not a case where this Court deems it mandated or prudent to take judicial notice as requested by Wesby, and, accordingly, her motion is denied. Therefore, we will confine our review of Wesby's assignment of error to the record.

## ASSIGNMENT OF ERROR

[]WESBY'S CONVICTIONS FOR OPERATING A VEHICLE UNDER THE INFLUENCE AND WEAVING WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF SECTION 3, ARTICLE IV, OHIO CONSTITUTION AS THE GREATER WEIGHT OF THE EVIDENCE AT TRIAL DEMONSTRATED HER POOR DRIVING WAS DUE TO HYPERGLYCEMIA FROM DIABETES.

{¶12} In her sole assignment of error, Wesby argues that her convictions for operating a vehicle under the influence and weaving were against the manifest weight of the evidence. We do not agree.

{¶13} When a defendant asserts that her conviction is against the manifest weight of the evidence,

an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

**{¶14}** In making this determination, this Court is mindful that "[e]valuating evidence and assessing credibility are primarily for the trier of fact." *State v. Shue*, 97 Ohio App.3d 459, 466 (9th Dist.1994), citing *Ostendorf-Morris Co. v. Slyman*, 6 Ohio App.3d 46, 47 (8th Dist.1982) and *Crull v. Maple Park Body Shop*, 36 Ohio App.3d 153, 154 (12th Dist.1987).

**{¶15}** Here, Wesby was convicted of operating a vehicle under the influence, in violation of Twinsburg City Ordinance ("City Ord.") 333.01(a)(1)(A), and weaving, in violation of City Ord. 341.34(b). In support of its case, the prosecution called Officer Fidoe. Officer Fidoe testified that, when he approached Wesby's car, he smelled the odor of alcohol and asked her if she had been drinking. She replied that she had two small beers. Officer Fidoe then performed the Horizontal Gaze Nystagmus test, and the defense stipulated that the officer observed a total of four out of six clues. Next, Officer Fidoe administered a walk and turn test, noting four out of eight clues. Officer Fidoe also instructed Wesby on performing a one-leg stand. During this test, Wesby dropped her foot three times. Based upon Wesby's performance on these tests, Officer Fidoe placed her under arrest for operating a vehicle while impaired.

**{¶16}** Officer Fidoe then asked Wesby if she needed to retrieve anything from her car, and she retrieved her insulin, which alerted the officer to her diabetic condition. The officer requested a medical squad meet them at the police station to check Wesby for any medical problems. When they arrived at the police station, Wesby's blood sugar was 390. Wesby administered a shot of insulin to herself. The officer then read her the "2255 form," and waited

the required twenty minutes to administer the breath test with the BAC testing device. However, at the end of the waiting period, Wesby refused to take submit a breath sample. The medical squad then requested Wesby sign a release "stating she was OK," to which she replied "she was fine," and "her blood sugar was always high." However, she went on to state that she needed to go to the hospital because her diabetes was very serious. Officer Fidoe then requested that she sign a form consenting to release her from arrest so that she could go to the hospital on her own accord, but she refused, and the officer proceeded to take her to the hospital with the medical squad while she was under arrest. En route, when the medic tried to give Wesby an IV to lower her blood sugar, she said "you're not stickin' nothing in my arm, I'm fine." To this, the medic questioned "you're refusing the IV to help bring down your blood sugar?" Wesby replied, "[Y]es, I am." When they arrived at the hospital, Officer Fidoe left one of Wesby's hands free from the belly chains, and the nurse gave her a cup and asked for a urine sample, but Wesby came back from the restroom without the cup. The nurse asked where it was, and Wesby stated that "you're not getting no urine sample." Wesby also refused a blood draw and asked for a sandwich and a juice.

{¶17} In response, the defense argued that Wesby's behavior and impaired driving exhibited on October 24, 2010 were due to her diabetes. Wesby testified at trial on her own behalf. She has been diabetic for twenty-four years, and she explained that her blood sugar levels are typically not well-controlled. She stated that her diabetes often causes her an inability to carry on conversations, irritability, stubbornness, poor coordination, nausea, frequent urination, dry mouth, and shakiness. Although she had two beers at 9:00 p.m. the night prior, she was not stopped by the officer until 4:00 a.m. on October 24, 2010. Wesby stated that when a person's blood sugar levels are high, this causes diabetic ketoacidosis, which produces acetones

on the breath. She was aware of "other cases" where acetones caused false positive breathalyzer readings and she refused to perform the BAC datamaster test for this reason. On cross-examination, Wesby explained that she did not tell the officers that the diabetes was the reason she refused to provide the breath sample, but she explained that she has difficulty carrying on conversations when she is in a hyperglycemic state. Wesby stated that her failure to provide a urine sample was due to the restriction of her hand movement due to the belly chain. Further, Wesby claimed that she did provide a blood sample at the hospital. However, the results of the blood test, according to Wesby, were not introduced into evidence at trial, but instead were submitted to the trial court for sentencing purposes, and then returned to her.

{¶18} We note that although Wesby alleges that her diabetic hyperglycemia symptoms include poor coordination, which, if accurate, may account for her poor performance on the "walk and turn" and "one leg stand" tests, she provides no explanation for her poor showing on the Horizontal Gaze Nsytagmus test, from which the parties stipulated that Officer Fidoe had noted four of six clues.

{¶19} After reviewing the entire record, weighing the inferences and examining the credibility of witnesses, we cannot say that the trial court's resolution of the testimony was unreasonable. Consequently, this is not the exceptional case where the trial court clearly lost its way and created a manifest miscarriage of justice in finding Wesby guilty. Where the evidence indicates that the finder of fact could reasonably choose between the State's or the defendant's version of the events, "[a] conviction is not against the manifest weight because the [finder of fact] chose to credit the State's version of events." *State v. Peasley*, 9th Dist. No. 25062, 2010-Ohio-4333, ¶ 18, citing *State v. Morgan*, 9th Dist. No. 22848, 2006-Ohio-3921, ¶ 35. Accordingly, Wesby's assignment of error is overruled.

III.

**{¶20}** Wesby's assignment of error is overruled. The judgment of the Stow Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Stow Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

WHITMORE, J.
CONCURS

BELLFANCE, P. J.
CONCURS IN JUDGMENT ONLY

APPEARANCES:

J. DEAN CARRO, Appellate Review Office, School of Law, The University of Akron, for Appellant.

DAVID M. MAISTROS, Attorney at Law, for Appellee.