[Cite as *Kuntz v. Ferrato*, 2012-Ohio-4873.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | | |
|---|---|---|
| BRAD J. KUNTZ | | C.A. No.  11CA0102-M |
| Appellant | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| JESSICA FERRATO | | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellee | | CASE No.  08 PA 0213 |

DECISION AND JOURNAL ENTRY

Dated: October 22, 2012

BELFANCE, Judge.

{¶1} Plaintiff-Appellant Brad Kuntz appeals from the decision of the Medina County Court of Common Pleas, Domestic Relations Division. For the reasons set forth below, we affirm.

I.

{¶2} Mr. Kuntz is the father and Defendant-Appellee Jessica Ferrato is the mother of I.F., born January 3, 2002. Mr. Kuntz and Ms. Ferrato have never been married. It is undisputed that both parents abused drugs, including methamphetamines, in the past.

{¶3} In 2008, Mr. Kuntz filed a complaint seeking the allocation of parental rights and responsibilities and the establishment of paternity for I.F. At the time, Ms. Ferrato was working on a fishing boat in Alaska and I.F. was in Mr. Kuntz' care. After Ms. Ferrato returned to Ohio, the matter proceeded to a hearing in July 2009, after which the magistrate issued a decision finding it in the best interest of I.F. that Mr. Kuntz be named the temporary residential parent and

legal custodian. Ms. Ferrato objected to the decision. In August 2009, the magistrate issued an order appointing a guardian ad litem and requiring both parties to undergo a "full panel hair analysis[.]" Following receipt of the test results, the guardian ad litem filed an ex-parte emergency motion requesting that Ms. Ferrato receive temporary custody of I.F. because Mr. Kuntz tested positive for both amphetamines and methamphetamines and the "results were exceptionally high." Ms. Ferrato's test results were negative. The motion was granted. A hearing was held on the motion on September 24, 2009, after which the magistrate issued an order recounting the testimony and awarding temporary custody to Ms. Ferrato. Specifically, the magistrate noted that Mr. Kuntz "believe[d] the excessively high results [we]re a result of the use of medications he was prescribed in the last ninety days [for ADHD], including Ritalin, Adderall and Straterra." The magistrate found that Mr. Kuntz' explanation was not credible.

{¶4} In December 2009, Ms. Ferrato filed a motion seeking to be declared I.F.'s sole residential parent and legal custodian. In February 2010, following a hearing, the magistrate ordered that Mr. Kuntz "immediately take a urine test * * * and fully disclose all prescribed medications. * * * [He] shall continue to take monthly urines tests * * * and have the results forwarded to the Guardian ad Litem and the Court's Confidential File." A final hearing was held on dates in April and May 2010. The magistrate issued a decision on August 12, 2010, concluding that it was in I.F.'s best interest that Mr. Kuntz be named the sole residential parent. The trial court adopted the magistrate's decision that same day. The magistrate noted that Ms. Ferrato and her mother talked negatively about Mr. Kuntz in front of I.F., that Mr. Kuntz had no plans to establish a residence outside of Ohio, whereas because of Ms. Ferrato's chosen profession, she might be required to move out of state, and that Mr. Kuntz and the guardian ad litem expressed concerns about I.F.'s hygiene and appearance while in Ms. Ferrato's care. While

the magistrate expressed concern over Mr. Kuntz' positive drug screen, the magistrate believed that Mr. Kuntz had "taken all necessary steps to rectify the situation and has tested clean in multiple subsequent tests." Thus, despite that fact that there was evidence that both parties loved I.F. and have positive attributes to offer him, the magistrate concluded that Mr. Kuntz should be designated the sole residential parent.

{¶5} Ms. Ferrato filed objections and a hearing was held on the objections. After which, the trial court vacated the magistrate's decision and concluded that it was in the best interest of I.F. that Ms. Ferrato be named the sole residential parent. The trial court expressed concern over Mr. Kuntz' positive drug screen, his use of prescription drugs without a prescription, his failure to disclose his prior substance abuse to his prescribing physician, and his failure to comply with court orders. The court acknowledged that there were concerns regarding some of Ms. Ferrato's parenting choices but concluded those concerns did not outweigh the court's concerns over Mr. Kuntz' substance abuse issues. Mr. Kuntz has appealed, raising three assignments of error for our review.

## II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IN MAKING ITS FINAL DECISION, IT CONSIDERED AND UTILIZED SEVERAL FACTS THAT HAD NOT BEEN INTRODUCED AS EVIDENCE AT TRIAL AND HAD NOT BEEN MADE A PART OF THE RECORD[.]

{¶6} Mr. Kuntz asserts in his first assignment of error that the trial court abused its discretion in considering facts not within the trial transcript in reaching its decision. We do not agree.

{¶7} As we have found evidence in the record to support the statements made by the trial court and challenged by Mr. Kuntz, we are not persuaded by his argument. First, Mr. Kuntz

asserts that the following paragraph from the trial court's entry contains facts which were not properly before the trial court:

> Initially, the Father maintained that his prescription medications for ADHD caused the false positive result in September of 2009. This allegation was disputed by the Medical Review Officer from the testing facility, who indicated to the Court that none of the prescriptions disclosed by the Father were responsible for the positive result. Nevertheless, at a hearing on September 24, 2009, Father continued to blame the positive test on his prescription medications.

{¶8} There are other documents in the record, including magistrate's orders, which support the statements made by the trial court. Mr. Kuntz has not explained why the trial court should not be able to rely on this information when reciting the history of the case, when determining whether prior orders have been complied with, or when determining whether a party's story has changed. *See In re J.C.,* 186 Ohio App.3d 243, 2010-Ohio-637, ¶ 14 (9th Dist.), quoting *In re LoDico*, 5th Dist. No. 2003–CA–00446, 2005-Ohio-172, ¶ 94 ("A trial court 'may only take judicial notice of prior proceedings in the immediate case.'"). We note that Mr. Kuntz has not asserted that the trial court's statements are inaccurate. Further, Mr. Kuntz has not asserted on appeal that he should have been given the opportunity to be heard on this issue, *see* Evid.R. 201(E), nor did he attempt to raise the issue below.

{¶9} Specifically, the magistrate's October 2, 2009 order, which summarizes testimony from the September 2009 hearing, states that "Father believes the excessively high results are a result of the use of medications he was prescribed in the last ninety days, including Ritalin, Adderall, and Straterra." Further, the fax accompanying Mr. Kuntz' September 2009 drug results, which was read at trial, stated that "this result is not due to [Mr. Kuntz'] current medications." Thus, the trial court's statements are supported by evidence in the record.

{¶10} Mr. Kuntz also asserts that the trial court could not examine its confidential file in weighing the evidence. Specifically, Mr. Kuntz finds it problematic that the trial court noted in

its entry that drug assessments and drug testing results were not in the confidential file when there was no testimony on this precise issue. Notably, prior magistrate's orders required that such results be forwarded not only to the guardian ad litem but also to the court's confidential file. Accordingly, we understand why the trial court would find it important to examine the confidential file to determine whether the parties had complied with the court's prior orders. Mr. Kuntz' only argument on this point appears to be the trial court's confidential file is not part of the trial court's record; however, Mr. Kuntz has pointed to no law that supports that conclusion nor has he alleged that he would be unable to make the confidential file part of the record on appeal if he so desired. *See* App.R. 16(A)(7).[1] Accordingly, we overrule Mr. Kuntz' first assignment of error.

## ASSIGNMENT OF ERROR II

THE [TRIAL COURT] ABUSED ITS DISCRETION WHEN IT CONCLUDED THAT FATHER'S SOBRIETY HAD NOT BEEN ESTABLISHED[.]

{¶11} Mr. Kuntz argues in his second assignment of error that the trial court erred in failing to conclude that Mr. Kuntz' sobriety had been established. Essentially, Mr. Kuntz asserts that the trial court's finding is against the manifest weight of the evidence because it discounted the guardian ad litem's testimony concerning Mr. Kuntz' drug screen and assessments.

{¶12} Recently, the Supreme Court of Ohio clarified that the criminal manifest weight standard applies in reviewing civil cases as well. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 17. Thus,

[t]he [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a

---

[1] We note that, given the confidential information at issue, such a file or set of documents could be filed under seal on appeal.

> manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.

(Internal quotations and citations omitted.) *Id.* at ¶ 20. "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21. "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts." (Internal quotations and citation omitted.) *Id.* Thus, "[i]f the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." (Internal quotations and citation omitted.) *Id.*

{¶13} As noted above, prior magistrate's orders required that Mr. Kuntz' drug test results and assessments be forwarded to the court's confidential file. Further, the magistrate's February 12, 2010 order required that Mr. Kuntz undergo an immediate drug test and one every 30 days afterwards. The trial court noted that the only subsequent drug test in the record was dated March 16, 2010. Thus, the trial court was left to consider the guardian ad litem's testimony and report with respect to the issue of Mr. Kuntz' sobriety. The trial court noted that certain statements in the guardian ad litem's report[2] concerning Mr. Kuntz' substance abuse were contrary to testimony presented at trial. This fact alone could have caused the trial court to hesitate in solely relying on the guardian ad litem's conclusions with respect to Mr. Kuntz' sobriety. The trial court also noted that, while the guardian ad litem indicated that she reviewed

---

[2] The guardian ad litem's report is not part of the record on appeal, and, thus, to the extent it is necessary to our review, we presume regularity in the trial court's findings. *No-Burn, Inc. v. Murati*, 9th Dist. No. 25495, 2011-Ohio-5635, ¶ 22.

Mr. Kuntz' assessment, the findings and conclusions from that assessment are not in the record. Thus, in light of the limited evidence in the record on the topic, the trial court found that the guardian ad litem's finding that it was unlikely that Mr. Kuntz would abuse drugs to be conclusory. In sum, it does not appear that the trial court had confidence in the guardian ad litem's assessment given contradictions apparent at trial and that it did not believe it had sufficient evidence from which it could be confident that Mr. Kuntz was sober. In light of the evidence in the record, we cannot say that the trial court's finding concerning the conclusory nature of the guardian ad litem's report is against the weight of the evidence. Accordingly, we overrule Mr. Kuntz' second assignment of error.

ASSIGNMENT OF ERROR III

THE TRIAL COURT ABUSED ITS DISCRETION IN VACATING THE MAGISTRATE'S DECISION AND NAMING MOTHER AS SOLE LEGAL CUSTODIAN OF THE MINOR [] CHILD[.]

{¶14} Mr. Kuntz asserts in his third assignment of error that the trial court abused its discretion in naming Ms. Ferrato the sole residential parent.[3]

{¶15} "This Court generally reviews a trial court's action with respect to a magistrate's decision for an abuse of discretion." (Internal citation omitted.) *Oberlin v. Oberlin*, 9th Dist. No. 25864, 2011-Ohio-6245, ¶ 7. "In so doing, we consider the trial court's action with reference to the nature of the underlying matter." *Tabatabai v. Tabatabai*, 9th Dist. No. 08CA0049–M, 2009–Ohio–3139, ¶ 18. "When making the allocation of the parental rights and responsibilities for the care of the children under this section in an original proceeding * * * the court shall take into account that which would be in the best interest of the children." R.C.

---

[3] While the court also considered whether shared parenting was appropriate and determined it was not, that conclusion has not been challenged on appeal, and, therefore, we do not address the shared parenting provisions in R.C. 3109.04.

3109.04(B)(1). "'[F]or a reviewing court to overturn a trial court's determination of custody, the appellate court must find that the trial court abused its discretion.'" *Taylor v. Taylor,* 9th Dist. No. 11CA010071, 2012-Ohio-4097, ¶ 9, quoting *Masters v. Masters*, 69 Ohio St.3d 83, 85 (1994). An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable." (Internal quotations and citation omitted.) *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

> In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
>
> (a) The wishes of the child's parents regarding the child's care;
>
> (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
>
> (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
>
> (d) The child's adjustment to the child's home, school, and community;
>
> (e) The mental and physical health of all persons involved in the situation;
>
> (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
>
> (g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
>
> (h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of

the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

R.C. 3109.04(F)(1).

**{¶16}** Mr. Kuntz argues that the trial court's conclusion that it was in I.F.'s best interest to have Ms. Ferrato be the sole residential parent is against the manifest weight of the evidence. It appears that Mr. Kuntz asserts that, if the trial court's conclusions about Mr. Kuntz' drug usage are discounted, the trial court's decision to vacate the magistrate's decision is not supported by the evidence. We do not agree.

**{¶17}** After conducting an independent review of the record, we cannot say that the trial court abused its discretion in naming Ms. Ferrato as the sole residential parent or that its conclusion is against the manifest weight of the evidence. There is evidence that both parties deeply care about the well-being of I.F. and that both parties reside in excellent school districts and live in adequate housing. Much of the dispute between the parties centers on the fact that Ms. Ferrato would like I.F. to attend school in her home district of Lakewood, while Mr. Kuntz would like I.F. to attend school in his home district of Medina. It is also clear that Mr. Kuntz and Ms. Ferrato have difficulties communicating with each other.

**{¶18}** At trial, both Mr. Kuntz and Ms. Ferrato testified. Mr. Kuntz is a mechanical engineer, and Ms. Ferrato has degrees in marine biology and environmental engineering. Mr.

Kuntz testified to his previous employment and indicated that he bought a house in Medina County in 2008. And, while Ms. Ferrato has owned a home in Lakewood since 2003, she spent several years working outside of the state before returning to Ohio in 2009. I.F. began living with Mr. Kuntz in March of 2007 while Ms. Ferrato was living and working in Philadelphia. After Ms. Ferrato stopped working in Philadelphia, she began working on a fishing boat in Alaska. In between her contracts on the boat, she would return to Ohio to spend time with I.F. Both parties also agreed that Ms. Ferrato's mother spent a good deal of time with I.F. and that the two had a good relationship which was encouraged by the parties.

{¶19} Ms. Ferrato also testified to incidents of alleged past physical abuse by Mr. Kuntz and expressed concern about Mr. Kuntz' prior drug abuse and his potential for relapse. She testified that she became concerned about I.F.'s behavior in early 2009 as I.F. "did not seem happy or well-adjusted and he seemed frightened." Ms. Ferrato indicated that I.F.'s behavior made her concerned that Mr. Kuntz was using drugs again. In addition, Ms. Ferrato was concerned that some marks on I.F. were cigarette burns and reported the concern to children and family services. According to the guardian ad litem, after investigation, children and family services did not believe the marks were a safety concern. Ms. Ferrato asserted that Mr. Kuntz often missed work or lost jobs because of his drug abuse, but Mr. Kuntz denied those allegations entirely during his testimony.

{¶20} Mr. Kuntz testified that he was diagnosed with ADHD when he was thirty-three and denied abusing methamphetamines since 2004. Mr. Kuntz' original physician ultimately referred him to a psychiatrist for medications, which included several other prescription medications prior to Desoxyn, a methamphetamine. And, while Mr. Kuntz had prescriptions for multiple ADHD medications at once, he averred that he never took more than one of the drugs at

a time. He asserted that the doctor was prescribing different prescriptions to find one that worked best. Mr. Kuntz admitted that, when he initially started taking Desoxyn, it was not prescribed to him and that he obtained it through a friend who got it online. He stated that he took it for approximately a month and a half without a prescription and that he took a five milligram pill four to five times per day. He also admitted that he did not initially tell his physician that he was taking Desoxyn, nor did he tell his physician that he formerly abused methamphetamines.

{¶21} In addition, Alfred Staubus, Ph.D., an expert in forensic toxicology, testified concerning Mr. Kuntz' initial drug results. Dr. Staubus testified that the initial report stated that both amphetamines and methamphetamines were detected in the sample. He indicated that the hair sample was taken from leg hair as opposed to head hair. He stated that this was significant because leg hair grows slower than head hair and, thus, "you would expect to see leg hair having a higher concentration [of a drug] than head hair." Thus, when confronted with the drug test report which concluded that "[i]t is * * * a very high number, therefore, very high usage[,]" Dr. Staubus disagreed with that conclusion. Dr. Staubus would not characterize the levels as exceedingly high. However, Dr. Staubus also testified he was unable to determine if the results represented use of Desoxyn (a prescribed methamphetamine) or a street methamphetamine; he explained that the test would only indicate if methamphetamine was detected.

{¶22} The guardian ad litem testified that she believed it was in I.F.'s best interest to have shared parenting with Mr. Kuntz designated as the residential parent for school purposes. She noted that both homes were appropriate for I.F. and that I.F. was bonded with both parents. The guardian ad litem also spoke with Ms. Ferrato's mother. Ms. Ferrato's mother indicated that she felt that both parties were good parents to I.F., although she was concerned about Mr. Kuntz'

past drug use. The guardian ad litem testified that she believed that I.F. needed stability and that going to school in Mr. Kuntz' district was likely to provide that. The guardian ad litem expressed concern that, given Ms. Ferrato's chosen profession and her previous work history, it was likely that Ms. Ferrato would have to find work out of state. The guardian ad litem thought it was in I.F.'s best interest to remain in Ohio.

{¶23} The guardian ad litem also testified concerning Mr. Kuntz' positive drug screen and his ADHD. The guardian ad litem opined that Mr. Kuntz' diagnosis was legitimate as more than one doctor had diagnosed him with ADHD. She testified that during the times she met with or spoke to Mr. Kuntz he did not appear to be under the influence of drugs. She noted that Mr. Kuntz was not prescribed the Desoxyn until after the initial positive drug test. However, subsequent to that test, Mr. Kuntz' drug test showed detectable levels of amphetamines and methamphetamines, which was expected given his prescription for Desoxyn.

{¶24} The guardian ad litem testified that I.F. told her that Ms. Ferrato and her mother spoke badly about Mr. Kuntz and that made I.F. sad. In addition, there were concerns that both parents were talking to I.F. about adult issues and that Ms. Ferrato repeatedly referred to Mr. Kuntz as a drug addict in e-mail correspondence with the guardian ad litem. Ms. Ferrato testified that she did speak with I.F. about Mr. Kuntz' drug use but only after I.F. had asked about whether she had used drugs. The guardian ad litem was also concerned that Ms. Ferrato repeatedly expressed concerns about Mr. Kuntz being a drug addict but nonetheless did not have a problem with Mr. Kuntz spending weekends with I.F., which seemed contradictory to the guardian ad litem.

{¶25} Ultimately, a major factor in the trial court awarding custody to Ms. Ferrato, and vacating the magistrate's decision, was Mr. Kuntz' positive drug screen, the circumstances

surrounding it, and Mr. Kuntz' past history of drug abuse. *See* R.C. 3109.04(F)(1)(e). It is undisputed that Mr. Kuntz tested positive for amphetamines and methamphetamines in his initial drug screen. It is also undisputed that the prescriptions he was taking at the time did not account for the drugs found in his system. Mr. Kuntz maintained at trial that the methamphetamines detected in the test could be explained by his taking Desoxyn, which he admitted he was taking without a prescription. Mr. Kuntz also admitted that he had not informed his physicians of his former substance abuse problems, including his former abuse of methamphetamines. The trial court clearly found this situation concerning. The trial court was also concerned that its records did not contain the test results and assessments that the magistrate's prior orders required. In light of the entire record, the trial court had reason to question Mr. Kuntz' credibility and honesty. The magistrate noted in its October 2009 order that Mr. Kuntz asserted that the initial positive drug screen was due to prescribed medications, and, yet, months later during the trial, Mr. Kuntz maintained that the positive result was instead due to his illegal use of a controlled substance, namely a prescription methamphetamine. The fact that Mr. Kuntz was later prescribed that controlled substance and the fact that the controlled substance is legitimately utilized to treat ADHD, does not detract from the fact that Mr. Kuntz was not initially forthcoming with the court. Moreover, the trial court was troubled by the fact that Mr. Kuntz has not been forthcoming with his physicians about his prior methamphetamine addiction. Thus, his physicians have been prescribing him a methamphetamine without knowledge that he was formerly addicted to that substance. This combination of circumstances, combined with the trial court's observation that Mr. Kuntz' results and assessments were not contained in its confidential file, reasonably could lead the trial court to not only question whether Mr. Kuntz was sober but also to question his ability to remain so in the future.

**{¶26}** Moreover, it is clear that the trial court considered all the evidence and carefully considered the magistrate's decision which specifically discussed each of the factors. The trial court noted that there were issues concerning some of Ms. Ferrato's parenting choices, and it is clear that it factored those into its decision. In light of the trial court's serious and understandable concerns about Mr. Kuntz and his potential for substance abuse, we cannot say that the trial court abused its discretion in concluding it was in I.F.'s best interest that Ms. Ferrato be named the sole residential parent, nor is that decision against the manifest weight of the evidence. Accordingly, we overrule Mr. Kuntz' third assignment of error.

III.

**{¶27}** In light of the foregoing, we overrule Mr. Kuntz' assignments of error and affirm the judgment of the Domestic Relations Division of the Medina County Court of Common Pleas.

Judgment affirmed.

---

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
EVE V. BELFANCE
FOR THE COURT

WHITMORE, P. J.
CONCURS.

DICKINSON, J.
CONCURRING.

{¶28} I concur in the majority's judgment and most of its opinion. I write separately regarding Mr. Kuntz's first assignment of error because the trial court incorrectly deprived Mr. Kuntz of an opportunity to be heard on the issue of judicial notice as required by Rule 201(E) of the Ohio Rules of Evidence. Mr. Kuntz's first assignment of error is that the trial court exercised improper discretion by considering certain factual materials that were part of the case file, but were not presented as evidence at the magistrate's hearing of this matter in April and May 2010. His argument is that, in ruling on objections to the magistrate's decision, the trial court considered "incompetent" evidence by looking beyond the hearing record. Mr. Kuntz has argued that the trial court incorrectly relied on a magistrate's summary of testimony offered by Mr. Kuntz in September 2009 regarding a drug test that was positive for methamphetamines. He has also argued that the trial court incorrectly relied on the fact that subsequent drug testing results were not present in the court's confidential file.

{¶29} Under Rule 201 of the Ohio Rules of Evidence, a court may take judicial notice of "facts of the case" at any stage of the proceeding regardless of whether either party requests it. Evid. R. 201(A), (C), (F). "It is well established that a trial court may take judicial notice of

prior proceedings in the immediate case before it." *State v. Brown*, 9th Dist. No. 24119, 2008-Ohio-5846, ¶ 16. "A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken." Evid. R. 201(E).

**{¶30}** The Staff Notes to Evidence Rule 201 provide that the rule, "in its entirety, reflects existing Ohio practice and, except for the added clarifying language to subdivision (A) which is not intended to result in a contrary construction, is identical to Federal Evidence Rule 201." *Twinsburg v. Wesby*, 9th Dist. No. 25813, 2012-Ohio-569, ¶ 7 (quoting 1980 Staff Note, Evid.R. 201). "The usual method of establishing adjudicative facts is through the introduction of evidence, ordinarily consisting of the testimony of witnesses. If particular facts are outside the area of reasonable controversy, this process is dispensed with as unnecessary. A high degree of indisputability is the essential prerequisite." *Id.* (quoting Advisory Committee Notes to Fed. R. Evid. 201). "A request to be heard under Fed. R. Evid. 201(e) must be made in a 'timely' manner. . . . If a party opposes notice, timeliness is measured from the date the party learns that notice has been requested or is being considered." Mueller and Kirkpatrick, *Federal Evidence*, Section 2:7 (3d ed).

**{¶31}** The trial court took judicial notice of historical facts of this case in the process of ruling on objections to a magistrate's decision rendered after a hearing. Although the rule allows for a request for hearing to be made after judicial notice has been taken, in this case, Mr. Kuntz was not notified that the trial court was considering taking judicial notice of certain historical facts in the record until after the court rendered judgment. Although he was entitled to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed, Mr. Kuntz could not have moved the trial court for reconsideration of the judgment.

*Avon Lake Sheet Metal Co. Inc. v. Huntington Envtl. Sys. Inc*., 9th Dist. No. 03CA008393, 2004-Ohio-5957, ¶ 11. The trial court incorrectly relied on facts of which it had taken judicial notice without notifying the parties before rendering judgment so that Evidence Rule 201 could be satisfied.

{¶32} The error is harmless, however, because Mr. Kuntz has not explained how the outcome would have been different if he had been afforded an opportunity to be heard "as to the propriety of taking judicial notice and the tenor of the matter noticed." Evid. R. 201(E); Civ. R. 61. Mr. Kuntz's only argument is that the trial court should not have been permitted to consider anything that was not taken as evidence at the hearing of the matter regardless of whether it was contained in the record. He has not put forth any argument challenging the validity of the facts judicially noticed, the propriety of the trial court taking judicial notice under the circumstances, or the validity of the conclusions drawn from the facts judicially noticed. Further, I am unable to discern any valid argument to support the proposition that judicial notice was improper under Evidence Rule 201(B).

{¶33} First, Mr. Kuntz has argued that the trial court improperly concluded that he had changed his story about why he tested positive for methamphetamines in September 2009. Although he testified at the hearing before the magistrate that the result was caused by his ingestion of a prescription medication that he had obtained illegally, he has argued that the trial court should not have considered any evidence to the contrary because there was no evidence admitted at the hearing that he had previously testified that he had a valid prescription for the drug before taking the test. He has not argued that the magistrate incorrectly recounted his earlier testimony. He has not argued that, based on the magistrate's summary, the trial court incorrectly concluded that Mr. Kuntz had changed his story about the positive drug test. His

only argument is that the trial court should not have been permitted to look outside the hearing transcript.

**{¶34}** Mr. Kuntz has also argued that the trial court should not have considered the fact that the confidential file did not include more than one subsequent negative drug test. The trial court noted that, in February 2010, the magistrate had ordered Mr. Kuntz to immediately submit to urinalysis and take monthly tests thereafter. The magistrate had ordered the test results to be filed in the court's confidential file, presumably for Mr. Kuntz's protection. The trial court also noted that the only result in the file indicated that Mr. Kuntz had waited over a month to submit to a test and then failed to follow up with subsequent testing prior to the final hearing date. Mr. Kuntz has not disputed that the magistrate issued the orders the trial court described. He has not argued that he submitted to the first test in less than a month after the magistrate ordered it nor has he argued that he took any subsequent tests. He has argued only that there was no evidence offered at the hearing about whether Mr. Kuntz had followed the magistrate's orders and what his subsequent drug testing revealed. If Mr. Kuntz had followed the magistrate's orders and obtained subsequent negative drug testing results, it would have behooved him to provide proof of that at the hearing before the magistrate. I see no argument against judicial notice that Mr. Kuntz could have successfully made at a hearing before the trial court under Evidence Rule 201(E). Therefore, I would hold that the trial court's error is harmless.

**{¶35}** Because Mr. Kuntz has not made and I cannot discern any argument to support the proposition that judicial notice was not proper under section (B) of Evidence Rule 201, I would hold the error is harmless. Therefore, I concur in the majority's judgment.

APPEARANCES:

DAVID L. MCARTOR and KRISTOPHER K. AUPPERLE, Attorneys at Law, for Appellant.

RANDALL M. PERLA, Attorney at Law, for Appellee.