[Cite as *In re P.M.*, 2025-Ohio-5211.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## JEFFERSON COUNTY

IN THE MATTER OF:  P.M.

.

**OPINION AND JUDGMENT ENTRY**
Case No. 25 JE 0004

Civil Appeal from the
Court of Common Pleas Court, Juvenile Division, of
Jefferson County, Ohio
Case No. 2019 CU 7

**BEFORE:**
Mark A. Hanni, Carol Ann Robb, Katelyn Dickey, Judges.

**JUDGMENT:**
Affirmed.

K.M., *Pro se*, Appellant, and

*Atty. Francesca T. Carinci*, for Appellee.

Dated:  November 12, 2025

**HANNI, J.**

{¶1} Appellant, K.M. (mother), appeals from a Jefferson County Common Pleas Court, Juvenile Division, decision granting the motion of Appellee, B.S. (father), for reallocation of parental rights and responsibilities of their 11-year-old son (son). Mother makes several allegations including that the trial court failed to apply a presumption in favor of keeping son's custody with her, failed to give proper weight to son's relationship with his sisters, considered improper evidence, referred to "children" in its judgment entry instead of the "child", erred in ordering the long-distance parenting plan for her parenting time, and failed to provide sufficient reasons for its decision. Mother's allegations, however, are unfounded. Therefore, we affirm the trial court's judgment reallocating parental rights and responsibilities of son to father and granting mother long-distance visitation.

{¶2} Son was born on January 29, 2014, to mother and father. On October 13, 2015, twin girls were born to mother and father. This case deals solely with son's custody.

{¶3} On January 19, 2019, maternal grandparents (grandparents) filed motions for custody of son and his sisters (the children). They alleged mother was homeless and suffering from drug addiction, father was not involved with the children, and the children were currently in grandparents' care.

{¶4} A magistrate held a hearing where all parties appeared. The trial court granted grandparents' motion on April 23, 2019. It granted custody of the children to grandparents and designated both mother and father as non-residential parents with weekly parenting time.

{¶5} On May 29, 2024, mother, acting pro se, filed a motion for reallocation of parental rights and responsibilities. Mother asserted that she was now clean and sober and had established a stable living arrangement. She stated she was now in a position to take custody of the children. Mother also noted that maternal grandfather had passed away recently and maternal grandmother was not in a position to care for the children herself.

**{¶6}** The trial court held a hearing on mother's motion on October 16, 2024. It stated that because maternal grandfather had passed away and maternal grandmother was unable to care for the children herself she had asked mother to file the motion for reallocation of parental rights and responsibilities. The court noted that mother was currently in a drug court program and would soon complete her classes. It noted that her drug screens had been negative since August 2024, she had stable housing, and she had the ability to meet the children's daily needs. The court pointed out that father, who also attended the hearing pro se, was in agreement with the court granting custody to mother. Father had been exercising regular visitation.

**{¶7}** The trial court subsequently granted mother's motion and designated her the children's residential parent. It designated father the non-residential parent and granted him parenting time three weekends a month from Friday evening to Sunday evening.

**{¶8}** On February 7, 2025, father, still acting pro se, filed a motion for reallocation of parental rights and responsibilities as to son only. Father alleged that since son had been living with mother, son's grades and behavior had declined. Father stated that son had been suspended from school five times and he was advised by son's school that if son was suspended again, alternative schooling would be recommended.

**{¶9}** The trial court held a hearing on father's motion on April 22, 2025. Both parties attended the hearing pro se. The court heard testimony from both parties. There were no other witnesses.

**{¶10}** The trial court granted father's motion. It reallocated parental rights and responsibilities naming father as son's residential parent. It granted mother parenting time three weekends a month from Friday evening to Sunday evening.

**{¶11}** Mother filed a timely notice of appeal on May 7, 2025.

**{¶12}** R.C. 3109.04 guides a trial court's discretion in a custody modification proceeding. *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). A trial court's decision regarding the custody of a child which is supported by competent and credible evidence will not be reversed absent an abuse of discretion. *Bechtol v. Bechtol*, 49 Ohio St.3d 21 (1990), syllabus; *Rohrbaugh v. Rohrbaugh*, 136 Ohio App.3d 599, 603 (7th Dist. 2000). A trial court has broad discretionary powers in child custody proceedings. *Reynolds v. Goll*, 75

Ohio St.3d 121, 124 (1996). This discretion should be afforded the utmost respect by a reviewing court in light of the gravity of the proceedings and the impact that a custody determination has on the parties involved. *Trickey v. Trickey*, 158 Ohio St. 9, 13 (1952).

{¶13} While mother's brief contains a section labeled "Statement of the Assignments of Error", the assignments of error are not clearly delineated or followed by specific arguments in support. In the body of her brief, however, mother sets out four "issues". These issues are more akin to assignments of error and are accompanied by arguments and case law in support. Thus, we will address each of mother's four issues as her assignments of error.

{¶14} Mother's first issue states:

THE FAO [final appealable order] MISTAKENLY FAILED TO ACCORD ANY WEIGHT TO THE PRESUMPTION IN FAVOR OF THE SHARED PARENTING DECREE.

{¶15} Mother argues in her statement of the issue that the trial court failed to give weight to the presumption in favor of shared parenting.

{¶16} This case has never had a shared parenting order in place. Nor was there a motion by either party or a suggestion that perhaps they could enter a shared parenting agreement. Thus, mother's argument as to shared parenting is misplaced.

{¶17} Mother goes on to argue there was a presumption in place for retaining the residential parent designation.

{¶18} R.C. 3109.04(E)(1)(a) provides:

The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior

shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

. . .

(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

{¶19} Pursuant to the statute, in order for a court to reallocate parental rights and responsibilities and change the residential parent, the court is required to find (1) that a change in circumstances has occurred since the prior custody order; (2) that the change in custody is in the child's best interests; and (3) that the benefits of the change in custody outweigh the harm caused by the change. *Vella v. Vella*, 2011-Ohio-1182, ¶ 23 (7th Dist.).

{¶20} Mother's argument here is that the court was required to apply a presumption in favor of maintaining her as the residential parent. In other words, she argues the trial court was required to retain her as the residential parent absent a change of circumstances.

{¶21} The trial court did find a change had occurred in son's circumstances. The court pointed out that son is having issues at school. Son has been suspended from school five times, all of which occurred since he started residing with mother. If son is suspended again, he will be placed in alternative schooling. The court further noted that son appears to have a lot of freedom at mother's house. Son does not like going to father's house because he does not have the freedom he has at mother's house. Mother permits son to babysit his nine-year-old sisters without adult supervision. She also permits son to walk his sisters three blocks to a park, which involves walking past a registered sex offender's house.

{¶22} The trial court's finding that a change in son's circumstances had occurred was supported by competent, credible evidence.

{¶23} Son began residing with mother in October 2024. The hearing on father's motion to reallocate parental rights and responsibilities was held in April 2025. Son had been suspended from school five times during this six-month period. (Tr. 7, 25). Son

had developed a habit of lying in the past year. (Tr. 8). According to father, son had been told to lie at school about his address so that he could remain in that school district. (Tr. 8). Even though mother lives in West Virginia, she kept him in Steubenville schools in Ohio despite his moving in with her in October 2024. (Tr. 30-31). Son was also given significant responsibility at mother's house as he was tasked with supervising his nine-year-old sisters. (Tr. 9-10). And son was given the freedom to walk three blocks from his home, past a registered sex offender's house, to spend time at a local park unsupervised. (Tr. 9-10).

{¶24} This evidence supports the trial court's finding that a change in son's circumstances had occurred since the prior custody order taking son out of grandmother's custody and placing him into mother's custody. Since that time, son has been suspended from school five times, has been given significant freedom, and has been given the task of supervising his younger sisters. Additionally, he has been attending school in Steubenville, Ohio (where grandmother resides) instead of in West Virginia (where mother resides) despite the fact that mother was given custody of son in October 2024. Based on these findings, we cannot conclude that the trial court abused its discretion in finding a change in circumstances here.

{¶25} Accordingly, mother's first issue is without merit and is overruled.

{¶26} Mother's second issue states:

THE JUVENILE COURT MANIFESTLY ERRED IN FINDING THAT A MODIFICATION IS NECESSARY TO SERVE THE BEST INTERESTS OF THE CHILD, WITHIN THE MEANING OF *DAVIS V. FLICKINGER*, 77 OHIO ST.3[d] 415 AND ORC 3109.04, REQUIRING THAT A MODIFICATION BE "BASED ON FACTS THAT HAVE ARISEN SINCE THE PRIOR DECREE OR THAT WERE UNKNOWN TO THE COURT AT THE TIME OF THE PRIOR DECREE" **AND** "A CHANGE IN THE CIRCUMSTANCES OF THE CHILD, HIS RESIDENTIAL PARENT, OR EITHER OF THE PARENTS SUBJECT TO A SHARED PARENTING DECREE, THAT THE MODIFICATION IS NECESSARY TO SERVE THE BEST INTERESTS OF THE CHILD, **AND** THAT "THE HARM LIKELY TO BE CAUSED BY A

Case No. 25 JE 0004

CHANGE OF ENVIRONMENT IS OUTWEIGHED BY THE ADVANTAGES OF THE CHANGE OF ENVIRONMENT OF THE CHILD.

{¶27} Mother first asserts here that in order to modify custody "a change in the child's environment must have caused harm to the [c]hild."

{¶28} Mother misreads the statute, however. Pursuant to R.C. 3109.04(E)(1)(a), in order to modify a prior decree allocating parental rights and responsibilities the court must find a change has occurred in the circumstances of either the child, the residential parent, or either of the parents subject to a shared parenting plan. The court then must find that a change is in the child's best interest. R.C. 3109.04(E)(1)(a). Finally, the court must find one of several factors apply, which can be that the harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child. R.C. 3109.04(E)(1)(a)(iii). There is no mention here that a change in the child's environment must have caused the child harm as mother alleges.

{¶29} Next, mother argues the trial court erred in failing to consider son's relationship with his sisters. She points to her testimony that son has always lived with his younger sisters.

{¶30} In determining a child's best interest either on an original decree allocating parental rights and responsibilities or on a modification of such a decree, the court shall consider all relevant factors, including, but not limited to:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers . . . the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

Case No. 25 JE 0004

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has [ever been convicted of certain offenses or had a child adjudicated abused or neglected];

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

R.C. 3109.04(F)(1).

{¶31} We will address the best interest factors other than the sibling relationship first. There was not a lot of evidence going to each of these factors.

{¶32} Clearly, both parents wish to be son's residential parent (R.C. 3109.04(F)(1)(a)). Neither party requested that the court interview son, so his wishes and concerns were not expressed to the court (R.C. 3109.04(F)(1)(b)). Son was clearly having adjustment issues at school given his numerous suspensions (R.C. 3109.04(F)(1)(d)). There was no testimony as to the mental or physical health of either parent (R.C. 3109.04(F)(1)(e)). There was no testimony that either parent was more or less likely to honor visitation (R.C. 3109.04(F)(1)(f)). There was no evidence as to any child support arrearages (R.C. 3109.04(F)(1)(g)). There was no evidence that either parent or members of their household had ever been convicted of certain offenses involving a child or had a child adjudicated abused or neglected (R.C. 3109.04(F)(1)(h)). There was no evidence that either parent continuously and willfully denied the other parent's right to parenting time (R.C. 3109.04(F)(1)(i)). Mother has already established a residence outside of Ohio in West Virginia (R.C. 3109.04(F)(1)(j)).

**{¶33}** As to son's relationship with his siblings, mother testified that son has grown up with his nine-year-old twin sisters and that separating him from them would be detrimental to him. (Tr. 27). However, father testified that son has recently been punching and hitting his sisters. (Tr. 11). Father was concerned that son was physically aggressive with his sisters because he was in charge of supervising them. Thus, while son's relationship of growing up with his sisters in the same house was a factor to consider so was the fact that he recently had to supervise them and had become aggressive with them.

**{¶34}** Thus, the trial court did not abuse its discretion in regard to considering son's relationship with his sisters.

**{¶35}** Mother's next argument is that evidence of son's "acting out" predated the hearing.

**{¶36}** All of the evidence predated the hearing. What mother likely means is that the evidence predated the time when she was granted custody – October 2024. And the only evidence that predated that time was father's testimony that son had started to develop a habit of lying, which father had noticed in the last year. (Tr. 8). This would mean the lying started approximately six months before son started living with mother and then continued once mother had custody. But the most significant evidence was that son had been suspended from school five times in the six months that mother had custody. Additionally, there was testimony that son had become physically aggressive with his sisters. Thus, mother's assertion that the evidence of son's acting out predated the time when she was granted custody is unfounded.

**{¶37}** Mother next takes issue with the fact that the court referred to the "children" in its judgment entry instead of the "child."

**{¶38}** On this point, mother is somewhat mistaken. The court stated at the beginning of its judgment entry: "There is one (1) child at issue[.]" It then named son. And in discussing the testimony and applying it to the statute, the court referred to "the child" no less than 25 times. There are only two instances where the trial court used the plural "children" instead of the singular "child". These were presumably typos or clerical errors.

Case No. 25 JE 0004

**{¶39}** Mother further argues she presented evidence that son got good grades and was popular in school. And she noted that he sees a school therapist in addition to an outside counselor. She refers to this evidence in an attempt to show that a change in custody is not in son's best interest.

**{¶40}** Mother testified that son is popular at school and is the "class clown". (Tr. 25). And she stated that he sees a school therapist. (Tr. 25). However, she also testified that son would attend West Virginia City Schools in the next school year because that is where she lives. (Tr. 31). So son's school was going to change for the 2025-2026 school year regardless of whether the trial court granted the reallocation of parental rights and responsibilities or not.

**{¶41}** In sum, mother has not raised any issues here that would lead this court to conclude that the trial court abused its discretion.

**{¶42}** Accordingly, mother's second issue is without merit and is overruled.

**{¶43}** Mother's third issue states:

THE COURT MANIFESTLY ERRED IN IMPOSING A "LONG-DISTANCE" PARENTING PLAN WHEN THE UNDISPUTED PHYSICAL FACTS REFLECT THAT THE PARTIES ARE NOT A LONG DISTANCE APART BUT RATHER 52 MINUTES AWAY FROM EACH OTHER.

**{¶44}** Mother argues the trial court erred in ordering the long-distance parenting plan for her parenting time. She states that she lives in Weirton, West Virginia and father lives in Monaca, Pennsylvania. Mother states that it takes 52 minutes to travel from her home to father's home. She asks this Court to take judicial notice of these facts.

**{¶45}** In general, an appellate court may take judicial notice of any fact of which the trial court could have taken judicial notice, even if the trial court failed to do so. *Twinsburg v. Wesby*, 2012-Ohio-569, ¶ 5 (9th Dist.).

**{¶46}** "We may take judicial notice of facts easily ascertainable from a reasonably reliable source, such as a map. 'The judge may inform himself as to the facts of geography, such as the navigable character of a river, the distance between two points, or the location of a given place within the jurisdiction, by resort to * * * public documents, maps, etc.'" *State v. Burkhalter*, 2006-Ohio-1623, ¶ 18 (6th Dist.), quoting *State v. Scott*,

3 Ohio App.2d 239, 243 (7th Dist. 1965). Courts may employ Google Maps to take judicial notice of distances and locations. *State v. Bradford*, 2018-Ohio-1417, ¶ 71-73 (8th Dist.).

**{¶47}** Thus, we may take judicial notice of the distance between mother's home and father's home.

**{¶48}** The actual distance between mother's home address and father's home address (as they are listed on the trial court's judgment entry), taking the shortest route between the two locations, is 35.8 miles according to Google Maps. Google Maps, https://www.google.com/maps/dir/3225+West+St,+Weirton,+WV+26062/891+Monaca+Rd,+Monaca,+PA+15061/@40.5218879,80.7525142,65004m/am=t/data=!3m2!1e3!4b1!4m14!4m13!1m5!1m1!1s0x8834307d1420767b:0xf3ce18f3318a1419!2m2!1d80.5899991!2d40.4047481!1m5!1m1!1s0x8834658ddb8a3603:0xd4b7c8a9cac4541d!2m2!1d80.2673141!2d40.6532126!3e0?entry=ttu&g_ep=EgoyMDI1MDkwOC4wIKXMDSoASAFQAw%3D%3D (accessed Sept. 10, 2025).

**{¶49}** According to the Jefferson County Parenting Guidelines, the standard Long Distance Companionship order provides that "when the non-residential parent resides more than 30 miles from the residence of the child" the non-residential parent shall have parenting time the first, third, and fourth weekends of every month from 6:00 p.m. on Friday until 6:00 p.m. on Sunday. As noted above, father's home is more than 30 miles from mother's home.

**{¶50}** Therefore, according to the distance between mother's and father's homes and the Jefferson County Parenting Guidelines, the trial court properly implemented the standard long-distance parenting time order.

**{¶51}** Accordingly, mother's third issue is without merit and is overruled.

**{¶52}** Mother's fourth issue states:

THE JUVENILE COURT COMMITTED REVERSIBLE ERROR IN ISSUING A DECISION THAT PROVIDES THIS COURT WITH INSUFFICIENT RATIONALE FOR ITS DECISION. *IN RE AM*, 166 OHIO ST.3D 137 (2020) EMPHASIZED THAT "THE BEST PRACTICE IS FOR THE JUVENILE COURT TO SPECIFICALLY ADDRESS EACH FACTOR."

Case No. 25 JE 0004

**{¶53}** In her final issue, mother claims the trial court failed to provide sufficient reasons for its decision so that this Court may conduct a meaningful review. She then argues that she has a constitutional right to custody of her child as against non-parents.

**{¶54}** The hearing in this matter was not complicated. Both parties appeared pro se and presented their own testimony. The transcript of the entire hearing is only 37 pages. In its judgment entry, the trial court discussed the applicable statute and the evidence put forth by both parties in detail. It then cited son's issues at school, specifically that son had been suspended five times since moving to mother's custody and being in counseling, and son's freedom at mother's house. The court then concluded a change in circumstances had occurred, a modification of custody was in son's best interest, and the harm likely to be caused by a change in environment was outweighed by the advantages of the change of environment. Thus, the trial court did provide sufficient reasons for its decision.

**{¶55}** Mother also cites to two cases in support of her statement that a mother has a constitutional right to custody of her child. The first case dealt solely with a mother's request for a transcript at public expense in a case where the trial court granted custody of the child to the grandmother. *In re A.P., 2014-Ohio-5244*, ¶ 19 (10th Dist.). The second case dealt with custody of a child as between the father and the maternal aunt. *Polhamus v. Robinson*, 2017-Ohio-39, ¶ 17 (3d Dist.).

**{¶56}** These cases did not deal with the reallocation of parental rights and responsibilities between two parents. They have no bearing on this case.

**{¶57}** Accordingly, mother's fourth issue is without merit and is overruled.

**{¶58}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Robb, P.J., concurs.

Dickey, J., concurs.

———————————————

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas, Juvenile Division of Jefferson County, Ohio, is affirmed. Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

**<u>NOTICE TO COUNSEL</u>**

**This document constitutes a final judgment entry.**