[Cite as *G.P. v. L.P.*, 2022-Ohio-1373.]

COURT OF APPEALS
MORROW COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| G.P. | : | JUDGES: |
| | : | Hon. Earle E. Wise, Jr., P.J. |
| Plaintiff-Appellant | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | |
| L.P (KNA N.M.M) | : | Case Nos. 2021 CA 0011 |
| | : | 2021 CA 0013 |
| | : | 2021 CA 0014 |
| | : | |
| Defendant-Appellee | : | O P I N I O N |


CHARACTER OF PROCEEDING:    Appeal from the Court of Common
Pleas, Case No. 2014 JUCST 74


JUDGMENT:    Affirmed


DATE OF JUDGMENT:    April 25, 2022


APPEARANCES:

For Plaintiff-Appellant

ANTHONY W. GRECO
SUSAN M. SURIANO
4945 Bradenton Avenue
Suite 100
Dublin, OH  43017

For Defendant-Appellee

PRIYA D. TAMILARASAN
175 S. Third Street
Suite 200
Columbus, OH  43215

*Wise, Earle, P.J.*

{¶ 1} This matter includes three consolidated cases. Plaintiff-Appellant G.P. appeals the August 23, 2021, September 7, 2021, and September 23, 2021 judgment entries of the Morrow County Court of Common Pleas, Juvenile Division. Defendant-Appellee is L.M., kna N.M.M.

## FACTS AND PROCEDURAL HISTORY

{¶ 2} The history of this matter is extensive as the parties have been involved in constant litigation since 2015. This case began as a parentage action. G.P. ("Father") and N.M.M. ("Mother") are the parents of four minor children, the first born in August 2005 and the last born in March 2013. Mother and Father were never legally married.

{¶ 3} Mother is originally from Ohio. In 2004, Mother and Father lived in Tennessee where Father is from, and lived close to Father's family.  All of the minor children were born in Tennessee.

{¶ 4} In August, 2013, Mother and Father moved their family to Hawaii so Father could start Island Metals, his metal-roof manufacturing business. In January 2014, following an alleged incident of physical abuse against Mother by Father, Mother left Hawaii with the children and moved in with her parents in Morrow County, Ohio.

{¶ 5} Some litigation followed surrounding the proper venue for the matters of allocation of parental rights and responsibilities and child support. In March and April of 2015, a trial was held in in the Morrow County Court of Common Pleas Juvenile Division. On June 12, 2015, the magistrate issued an opinion finding in part that Morrow County was the proper venue for the matter and further finding Father should pay $198.58 in child support per child, per month. Father filed objections to the magistrate's decision and the

trial court adopted the magistrate's decision. Father appealed and on November 17, 2016, this court affirmed. *G.P. v. L.M.* 5th Dist. No. 16CA0005, 2016-Ohio-7955.

{¶ 6} On October 23, 2018, Mother and Father filed an Agreed Entry as to the reallocation of parental rights and responsibilities wherein Mother was named the residential and custodial parent. The parties were unable to reach an agreement as to child support.

{¶ 7} On October 10, 2018, a hearing was held on mother's motion to modify child support. At that time, Father's child support obligation was $13,714.83 in arrears. The magistrate issued a decision on December 11, 2018 finding Father was earning substantially more than he was in 2014 and setting his gross income at $285,467.66. Father was ordered to pay a monthly total of $4,964.71 for child support. Father objected, but on March 14, 2019 the trial court confirmed the magistrate's decision. Father did not appeal.

{¶ 8} Before the trial court confirmed the magistrate's decision, Father filed a motion on December 21, 2018 for contempt alleging Mother was in violation of the agreed-upon orders filed on October 23, 2018. His complaints centered on his alleged inability to communicate with the children when they were with mother.

{¶ 9} On April 12, 2019, upon agreement of the parties the magistrate issued an order finding Mother in contempt for failure to comply with the October 23, 2018 orders concerning Father's contact with the children. Mother was given the opportunity to purge her contempt by complying with the conditions set forth in the April 12, 2019 order or face a fine and up to 30 days in jail. The magistrate set a purge hearing for May 31, 2019, but due to a clerical error, counsel for Father appeared but counsel for Mother did not. The

matter was reset for July 29, 2019 but there is no indication in the record that this hearing took place. Instead, it was addressed at a September 2020 trial.

{¶ 10} On July 12, 2019, Mother filed a Motion to Show Cause against Father for failure to pay child support as ordered and failing to allow the children telephone contact with Mother when they were in Father's care. At that point Father's child support obligation was $81,014.21 in arrears.

{¶ 11} On July 15, 2019, Father filed a motion to reallocate parental rights and responsibilities including parenting time and further requesting modification of child support. In his motion Father stated he was selling his business in Hawaii, moving to Ohio, and that his income would be decreasing significantly. Around the same time, Father, his wife L.P, and their child moved from Hawaii to Clintonville Ohio, close to mother's residence.

{¶ 12} On July 25, 2019 Mother filed three motions. The first requested a temporary restraining order restraining Father from liquidating any assets, including selling his business. Mother also filed a Motion to Dismiss arguing Father's relocation was not sufficient cause to allow reallocation of parental rights. Finally, Mother filed a Motion to Appoint Expert requesting the appointment of a financial forensic expert to examine Father's finances at Father's expense to determine if Father possessed the funds to satisfy his child support arrearage.

{¶ 13} On July 31, 2019, following a pretrial/status hearing, the magistrate declined to enjoin Father from selling his business, but ordered the parties to brief their respective positions on the issue. The magistrate also appointed a new Guardian Ad Litem (herein GAL) at the request of the parties.

{¶ 14} A pretrial/status hearing was held on September 19, 2019. The day before, Father made an arrearage payment of $70,000. His arrearage was therefore reduced to $17,049.39 as of September 19, 2019. Matters remaining before the court were Mother's motion for contempt filed July 12, 2019 against Father for failure to pay child support as ordered, Father's July 15, 2019 motion for reallocation of parental rights and modification of child support, Mother's motion for appointment of an expert, and her motion for a temporary restraining order to prevent Father's sale of Island Metals. The parties agreed to continue the hearing on Mother's motion for contempt for failure to pay child support in order to give Father the opportunity to pay all arrears and establish consistent child support payments as ordered. Further, because Father relocated to Ohio, the magistrate issued temporary orders regarding Father's companionship time.

{¶ 15} On September 20, 2019, the magistrate was advised by the Office of Child Support that the $70,000 payment made by Father was returned for insufficient funds. Father was therefore still in arrears in excess of $87,000.

{¶ 16} On October 4, 2019, a pretrial was held and the magistrate issued supplemental visitation orders.

{¶ 17} On November 26, 2019, Father, through new counsel, filed a Motion to Enforce Sentence requesting Mother be incarcerated for a period of 30 days and fined $250.00 for failure to comply with the court's April 12, 2019 orders. Father had purchased a phone for the children pursuant to the April 12, 2019 orders of the court. He alleged Mother prevented the children from using the phone to communicate with him while the children were in her care. Father further alleged Mother had failed to provide a complete list of medical providers to Father as ordered.

{¶ 18} Also on November 26, 2019, Father filed a motion for a custody evaluation. The motion requested all parties submit to a psychological testing for purposes of the evaluation. Father alleged because he was now living in Ohio, minutes away from Mother's residence, a new evaluation was appropriate.

{¶ 19} In December 2019, Father, his wife, and their child moved to Marengo, Ohio where they had purchased a home.

{¶ 20} On December 6, 2019, the magistrate ordered the GAL to review Father's motions and make a recommendation as to modification of the temporary orders.

{¶ 21} On December 12, 2019, Father filed a motion for contempt against Mother for failing to permit visitation earlier in the month.

{¶ 22} On January 2, 2020 a pretrial was held. Mother's motion to prevent Father from selling Island Metals was rendered moot as Father had already sold the business. The magistrate denied Mother's motion for valuation of the business because there had been testimony less than one year prior as to the value of the company. The magistrate also issued temporary orders setting limits on discovery and addressing visitation, exchange of the children for visitation, and conduct of the parties during the children's extracurricular activities.

{¶ 23} On March 20, 2020 Father filed a Motion for Shared Parenting with a proposed shared parenting plan and a Motion for an In-Camera Interview of the three oldest children. On March 26, 2020 Father filed a motion for make-up parenting time. This motion was denied in temporary orders issued March 30, 2020.

{¶ 24} On May 22, 2020 Mother filed a Motion for In-Camera Interview of Minor Child, specifically the youngest child. The child was later interviewed by the magistrate and the GAL.

{¶ 25} On July 15, 2020 Father filed a motion for appointment of separate counsel for the children due to a potential conflict between the recommendations of the GAL and the children's wishes.

{¶ 26} An in-camera interview with the trial court, the GAL and the children took place on July 24, 2020. The magistrate observed the children appeared stressed and uneasy, with the oldest being visibly upset. The children had just returned from spending time with Father and expressed a desire to spend more time with Father. Because the wishes of the children were at odds with the GAL's findings and preliminary recommendations, the magistrate appointed Attorney William Leber as counsel for the children and ordered Father to post a sum of $1,600.00 to Leber's office on or before August 15, 2020. Leber later spoke with the children individually.

{¶ 27} In August 2020 Father's relationship with his two oldest children changed dramatically when Father served both stepfather T.M. and his oldest child through Mother with subpoenas at one of the children's soccer games in front of the children's peers. The children attend a very small private school where everyone knows everyone else. The oldest child was so mortified by her Father's choice and its impact she refused to go to school the following day. T.M. was angered by Father's decision to serve them at the game as well, approached Father at the game and had words with him.

{¶ 28} Leading up to trial, Father deposed Mother on September 1, 2020 and Mother deposed Father on September 4, 2020.

### September 2020 Trial

{¶ 29} The matter then came before the magistrate for trial on September 24 and 25, 2020. While the parties had filed the above noted barrage of motions, many had been settled or otherwise disposed of before trial. Five matters remained pending before the

court for trial, one motion of Mother's and four of Father's, specifically: (1) Mother's July 12, 2019 motion for contempt against Father for failing to pay child support as ordered; (2) Father's July 15, 2019 motion to reallocate of parental rights and responsibilities; (3) Father's request to modify child support contained in the same motion; (4) Father's December 12, 2019 motion for contempt against Mother for failing to permit visitation/contact in early December 2019 and Father's November 26, 2019 motion to enforce sentence against Mother for failing to meet her contempt purge conditions; and (5) Father's March 20, 2020 motion for shared parenting.

**Evidence Pertaining to Mother's Motion for Contempt Against Father for Failure to Pay Child Support as Ordered, and Father's Motion to Modify Child Support**

{¶ 30} Matthew Hellman, Administrator of the Morrow County Job and Family Services Child Support Agency testified that as of the day of trial, Father's child support order was $4,964.71 per month. As of the same date, Father was $46,773.13 in arrears. Between January 2020 and August 2020, Father made a single child support payment of $1,900.00. On September 8, 2020, father made a $950.00 payment.

{¶ 31} When the magistrate questioned Father about his finances, counsel for Father intervened and stated Father's wife E.P. tended to their financial affairs and would be testifying. Yet outside of home expenses, E.P. seemed to know very little about their finances. According to testimony of Father, E.P., and exhibits contained in the record, Father sold his business in Hawaii for approximately $700,000. As of September 20, 2019 Father's U.S. Bank account had a balance of $347,442.50. In November 2019 another $69,199 was deposited into the account for a total of $416,641 in deposits. But in February 2020, the account had a balance of $2,297. Bank records

submitted by Father were largely redacted making it impossible to determine where the funds went.

{¶ 32} Father formed a new business in Ohio, Barns and Metal, Inc. E.P. stated she is not a signatory on the Barns and Metal account, does not balance the checkbook and does not maintain a profit and loss statement. Instead she testified their accountant handles these matters. Upon their move to Ohio in July 2019, Father paid $140,000 cash for a home in Morrow County, spent at least $90,000 renovating the home and hired two shifts of workers to help. According to E.P. the home was initially in her name only, but Father's name was later added to the deed. Father then took out a $220,000 mortgage against the home. None of Father's bank records show where this money went, but E.P. testified that in April 2020, she invested $120,000.00 in a new business, Dutch Tech, Inc. E.P. stated she is a 60% owner of Dutch Tech and also the owner of its umbrella company Brighter Holdings. She further testified Father had nothing to do with Dutch Tech, Inc., and that a friend owns the other 40%. She testified she used the $120,000 to buy product.

{¶ 33} Asked where the remaining $100,000.00 from the mortgage went E.P. claimed closing costs, personal expenses, and attorney fees. E.P. testified Father's gross income from January to September 22, 2020 was $58,227.46 and his net income was $13,811.72. She stated they paid roughly $60,000.00 in attorney's fees in this matter and Father's parents also paid a portion of their attorney's fees. E.P. testified they paid $80,000 in taxes in 2019. She stated Father's income for 2019 was $3,400 because he worked very little. Father did not submit 2018 or 2019 individual tax returns.

**Evidence Pertaining to Father's Motion for Reallocation of Parental Rights and**

**Shared Parenting**

{¶ 34} Father presented little evidence regarding any changes for the children or Mother. While Mother did marry and she and the children moved into her husband's home, the children still attend the same school, participate in the same activities with the same peers, and reside in the same geographic area. Father did present evidence regarding change in his own circumstances, specifically his move to Ohio, his marriage to E.P., and the birth of their daughter. As of the date of trial, Father testified he had no intention to move back to Tennessee, yet he and his wife maintain a residence in Tennessee, have Tennessee driver's licenses, and maintain a warehouse for E.P.'s business in Tennessee.

{¶ 35} The three children old enough to voice an opinion to their attorney and the GAL as to who they wished to live with stated they desired to stay with Mother. Abundant evidence was presented regarding the inability of Mother and Father to get along, communicate, or interact in any constructive way.

**Evidence Pertaining to Father's Motion for Contempt Against Mother for Failure to**

**Permit Visitation or Contact in Early December 2019 and Motion to Enforce**

**Sentence for Mother's Failure to Meet Purge Conditions**

{¶ 36} Per the magistrate's April 12, 2019 order, Mother needed to meet four conditions in order to purge her contempt. Specifically: (1) provide Father with a schedule of the children's activities; (2) provide Father with a list of the children's medical providers and all non-emergency appointments; (3) use Our Family Wizard (OFW), a family communication application for communication between the parties, and (4) permit

communication between the children and Father via use of a cell phone provided to the children by Father.

{¶ 37} Father presented exhibit 12, which contains OFW messages from Father that Mother never opened or responded to. Mother stipulated to the same. But the exhibit contained only a fraction of the total communications exchanged in OFW.

{¶ 38} Mother stated the children's extracurricular activities are posted in another application, TeamSnap, and that Father has accesses to the application. Mother's exhibit's J and K contain OFW messages giving Father the names of the children's pediatrician and dentist. Mother further testified the children have unrestricted access to the telephone provided by Father.

{¶ 39} Father also presented evidence alleging Mother denied him visitation in December 2019, February 2020, and spring break 2020.

{¶ 40} Mother testified that in December, 2019, one of the children alleged Father choked him, apparently as a form of discipline. While an investigation took place, Father's visits were suspended.

{¶ 41} As for February 2020, Mother testified the parties were operating under temporary orders contained in Mother's exhibit G which required Father to present proof of mold remediation in his home before overnight visits would resume. Father was to provide evidence of mold remediation on or before February 7, 2020 and failed to do so.

{¶ 42} Finally, as to spring break 2020, Mother admitted there had been some confusion on her part as to whose weekend it was and she gave Father makeup visitation time.

**Other Matters Relevant to this Appeal**

{¶ 43} Father called his process server, Stephanie Fike, to testify at trial and counsel for Mother objected to Fike's testimony as not relevant. Counsel for Father proffered that the evidence would show it was not the service that drove a wedge between Father and his children, but rather stepfather T.M.'s response to the service. The trial court sustained Mother's objection to Fike's testimony, finding it irrelevant to any issue before the court.

**Magistrate's November 2020 Decision**

{¶ 44} On November 16, 2020, the magistrate issued a 34-page decision finding: (1) Father failed to demonstrate a change in circumstances which would warrant a change of residential parent and even if Father had, a change in custody would be contrary to the best interests of the children; (2) the parties have demonstrated they would be incapable of executing a shared parenting plan; (3) given the history of the case, Mother's denial of visitation, while concerning, was not contemptuous as reasonable explanations were provided and were justified; (4) while Mother should have replied to the OFW messages presented by Father, most of the messages Mother failed to read or respond to were unnecessary communications from Father which included attempts to defy court orders as to the procedure for exchange of the children for visitation, demands for information Mother previously provided, and demands to send certain clothing with the children despite the fact Father was not providing financial support for the children; (5) Mother met the 2019 purge conditions and even if that were not true, it would be inequitable and not within the children's best interests for Mother to serve time in jail; (6) Father presented no evidence demonstrating he was unable to make child support payments as ordered and was therefore in contempt for failing to pay child support as ordered; (7) Father provided

no real evidence of his income, appeared to be voluntarily underemployed, failed to provide enough information for the magistrate to estimate Father's potential income in Ohio if fully employed and therefore his motion to modify child support was denied; (8) Father was found in contempt for failing to pay child support as ordered.

{¶ 45} The magistrate ordered Father to make full monthly payments for his child support for November and December of 2020 and January 2021, pay all child support arrears by January 31, 2121, and establish a bank account from which child support could be withdrawn. A purge hearing for Father was set for February 22, 2021. The magistrate further set a visitation schedule per recommendation of the GAL which included a phased-in return to Local Rule 2 visitation. Per the judgment entry "[p]rogress from one phase to the next would be determined by the success of the previous month and per interaction with the children with the GAL or some other court-appointed advocate." The magistrate ordered the GAL to remain involved in the case to facilitate visitation and ordered Father to bring the bill for the GAL current. The magistrate further ordered neither party could file any additional motions without first making a good-faith attempt at mediation with the court mediator.

## History Following Trial

{¶ 46} On November 23, 2020, seven days after the magistrate issued her decision Father filed a motion for contempt against mother for failing to provide Father parenting time on October 16, 17, and 18, 2020, and November 13, 14, and 15. On November 30, 2020, Father voluntarily withdrew the motion.

{¶ 47} Also on November 30, 2020, Father filed 22 initial objections to the magistrate's November 16, 2020 decision and a motion to modify child support pursuant to R.C. 3119.79.

{¶ 48} On February 1, 2021, Father filed supplemental objections to the magistrate's decision filed November 16, 2020, outlining an additional 23 objections. Mother filed her response to Father's objections on March 15, 2021.

{¶ 49} On March 15, 2021, Mother filed a motion to modify temporary orders because Father relocated to Tennessee and had become increasingly hostile toward the children and the GAL visitation supervisor. A hearing was set for June 18, 2021 to address the matter of Father's relocation.

{¶ 50} On May 7, 2021, Father filed a notice of relocation and provided his new address in Tennessee. He also filed a motion to modify the temporary orders regarding parenting time in light of his relocation. On May 10, 2021, the trial court set a hearing on Father's motion to modify for the same day as Mother's motion to modify, June 18, 2021.

{¶ 51} On June 11, 2021, Father filed a motion for contempt against the GAL and a motion to remove the GAL. In his motion for contempt, Father alleged the GAL was in violation of Morrow County Local Rule 13.07(10) in that she had failed to provide Father with a billing statement. Father also alleged the GAL had refused to facilitate visitation until her fees were paid by Father as ordered. Father paid the GAL's fees through January 2021 and supervised Zoom calls resumed until March 18, 2021. Thereafter, the GAL advised the magistrate in an email that Father was becoming increasingly hostile towards her during calls with the children and with both her and Mother in emails, text messages, OFW, and in demanding and menacing voice mails. The GAL further advised the magistrate she was unwilling to supervise any further Zoom calls as she did not believe they were in the children's best interests. Father requested a hearing on the matter. In his motion to remove the GAL, Father cited the same grounds and argued the GAL's refusal to facilitate Zoom visitation until she was paid is unacceptable, and her emails to the court

and counsel regarding lack of payment and Father's hostility reflected her inability to remain independent and objective.

{¶ 52} Directly before the June 18, 2021 hearing the magistrate conducted an in-camera interview with three of the four children as one was away at camp. Also present for the in-camera hearing were the GAL and Attorney Leber. The GAL requested the in-camera interview in an attempt to move visitation forward.

{¶ 53} Father has failed to include a transcript of the June 18, 2021 hearing. According to the subsequent judgment entry filed June 18, 2021, however, as of the day of the hearing, Father's objections to the magistrate's November 16, 2020 decision were before the Judge, but the matter had been remanded to the magistrate to determine Father's current residence. Present at the hearing were the parties and the GAL. Father was given the opportunity to present evidence on his motions to remove the GAL and his motion to hold the GAL in contempt, but counsel for Father indicted he was unprepared to do so. Upon its review of the motions and information provided by the parties at the hearing the magistrate indicated she would rule on the motions without a formal hearing.

{¶ 54} In the June 18, 2021 judgment entry, the magistrate found: (1) Father had relocated to Tennessee and was living with his wife and two children; (2) Father would have supervised visitation with the children that same day; (3) future facilitation of visitation was a possibility; (4) Father's motions to remove the GAL and further find the GAL in contempt were found to be frivolous and were denied.

{¶ 55} On July 12, 2021, Father served the GAL with a subpoena for her records in this matter; information that is confidential per the Ohio Rules of Superintendence.

{¶ 56} On July 23, 2021, Father filed objections to the magistrate's June 18, 2021 decision.

{¶ 57} On July 26, 2021, the trial court quashed Father's subpoena for the GAL's records.

{¶ 58} On August 23, 2021 the trial court ruled on Father's objections to the magistrate's November 16, 2020 decision. This is the first judgment entry Father appeals from. The trial court overruled all of Father's objections with the exception of objections 1, 2, and 7. Objections 1 and 2 pertained to the magistrate's finding that a change in the child support law was not a change which warranted a modification of child support. The court found R.C. 3109.02, enacted before Father filed his motion for modification of child support, applied to Father's motion, and modified his support order to $3432 per month/$858 per child, as of August 1, 2020. Objection 7 pertained to the amount of Father's child support arrearage which also changed due to the court's findings on objections 1 and 2.  The court remanded the matter to the magistrate to redetermine Father's arrearages.

{¶ 59} On September 13, 2021, Father filed a motion to stay execution of judgment pending appeal regarding child support issues only.

{¶ 60} On September 2, 2021, Father filed supplemental objections to the magistrate's June 18, 2021 decision.

{¶ 61} On September 7, 2021, the trial court overruled Father's objections to the magistrate's June 18, 2021 decision denying removal of the GAL and denying Father's motion to hold the GAL in contempt. The trial court noted Father's motions were frivolous and further appeared to be an attempt to intimidate the GAL. This is the second judgment entry Father appeals from.

{¶ 62} On September 13, 2021, Father filed a Motion to Modify Parenting Time and a request for hearing. In support of his motion Father indicated he had relocated to

Tennessee. Father additionally stated that while he was filing a simultaneous appeal of the August 23, 2021 judgement entry, he sought a stay on the issue of his child support obligation and arrearages only and not issues of parenting time. He filed the motion to stay the same day as well as his notice of appeal of the magistrate's August 23, 2021 decision.

{¶ 63} Also on September 13, 2021, without a hearing, the trial court issued a judgment entry modifying Father's child support obligation as per his motion to modify filed November 30, 2020. The trial court reduced Father's child support obligation to $709.41 per month per child plus a 2% processing fee and cash medical support of $116.94 plus a 2% processing fee effective November 30, 2020. Father's obligation was reduced in light of the fact that Father and E.P. now have two children of their own. This is the third judgment entry Father appeals from.

{¶ 64} On October 4, 2021, Father filed a notice of appeal of the September 7, 2021 judgement entry overruling Father's objections to the magistrate's June 18, 2021 decision denying removal of the GAL and denying Father's motion to hold the GAL in contempt. On the same day Father filed a notice of appeal of the trial court's September 13, 2021 judgment entry modifying his child support obligations.

{¶ 65} On October 14, 2021 Father filed a motion to stay the September 13, 2021 judgment pending appeal regarding child support issues only. On the same day Father filed a motion to modify child support.

{¶ 66} On October 21, 2021 a hearing was held before the magistrate upon remand from the trial court to determine the amount of arrearage owed by Father, to determine purge conditions, and to address his request for a stay of child support issues pending appeal. There is no transcript of this hearing included in the record. Per the confirmation

of the magistrate's decision filed October 22, 2021, following a hand audit by the Morrow County Child Support Agency it was determined Father was $76,863.13 in arrears in child support to Mother and $4,646.70 in arrears for administrative fees owed to the Agency. The magistrate noted Father's monthly obligation had been reduced from $4,338.44 for all four children to $2837.64 per month for all four children, and that he had not met the purge conditions set on August 23, 2021. The magistrate found new purge conditions needed to be created, but that Father had requested a stay of child support issues pending appeal. The magistrate granted Father's request for stay on all issues except payment of current child support. Father was ordered to post bond in the amount of the child support arrears which may be forfeited to pay the child support arrears if this court did not further modify Father's child support obligation.

{¶ 67} The matter is now before this court for consideration. Father raises five assignments of error for our consideration as follow:

I

{¶ 68} "THE TRIAL COURT ABUSED ITS DISCRETION AND MADE AN ERROR OF LAW WHEN IT IMPUTED APPELLANT TO AN ANNUAL INCOME OF $285,467.00 FOR PURPOSES OF CALCULATING CHILD SUPPORT."

II

{¶ 69} "THE TRIAL COURT ABUSED ITS DISCRETION AND MADE AN ERROR OF LAW WHEN IT RULED UPON APPELLANT'S MOTION TO MODIFY CHILD SUPPORT, FILED NOVEMBER 30, 2020 WITHOUT A HEARING"

III

{¶ 70} "THE TRIAL COURT ABUSED ITS DISCRETION AND MADE AN ERROR OF LAW WHEN IT DENIED APPELLANT'S MOTION FOR THE REALLOCATION OF PARENTAL RIGHTS AND RESPONSIBILITIES."

IV

{¶ 71} "THE TRIAL COURT ABUSED ITS DISCRETION AND MADE AN ERROR OF LAW WHEN IT DENIED APPELLANT'S MOTION TO ENFORCE A PRIOR SENTENCE FOR CONTEMPT OF APPELLEE'S FAILURE TO PURGE."

V

{¶ 72} "THE TRIAL COURT ABUSED ITS DISCRETION AND MADE AN ERROR OF LAW WHEN IT DENIED APPELLANT'S MOTION FOR CONTEMPT AS AGAINST THE GUARDIAN AD LITEM."

I

{¶ 73} In his first assignment of error, Father challenges the trial court's imputation of his income at $285,467 for purposes of child support, the trial court's mention of historical facts of the case, and alleged consideration of facts outside the record in its review of Father's objections to the magistrate's decision. We disagree.

**Standard of Review**

{¶ 74} In *Booth v. Booth*, 44 Ohio St.3d 142, 541 N.E.2d 1028 (1989), the Ohio Supreme Court determined that abuse of discretion is the appropriate standard of review in matters concerning child support. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). Further, as an appellate court, we are not the trier of fact.

Our role is to determine whether there is relevant, competent, and credible evidence upon which the factfinder could base his or her judgment. *Tennant v. Martin-Auer*, 188 Ohio App.3d 768, 2010-Ohio-3489, 936 N.E.2d 1013, ¶ 16 (5th Dist.), citing *Cross Truck v. Jeffries*, Stark App. No. CA-5758, 1982 WL 2911 (Feb. 10, 1982).

**Child Support Calculation With Voluntary Underemployment or Unemployment Analysis**

{¶ 75} Before addressing Father's arguments under this assignment of error, we note that within this assignment of error as well as at oral argument, counsel for Father alleged Mother had the burden of prove Father was voluntarily underemployed or unemployed because the motion was Mother's. This is inaccurate. Only one motion of Mother's was before the court on September 24-25, 2020 and that was Mother's July 12, 2019 motion for contempt against Father for failing to pay child support as ordered on December 11, 2018. In that motion and the attached affidavit, Mother never alleged Father was voluntarily under or unemployed before or after that date. Father, on the other hand had filed a motion to modify his child support obligation. The burden, therefore, was on Father to demonstrate a substantial change in circumstances warranting modification of the previous child support order.

{¶ 76} We address Father's arguments under his first assignment of error out of order for ease of discussion.

**Trial Court's Determination of Father's Current Income**

{¶ 77} Father argues the trial court abused its discretion by arbitrarily using outdated financial information to determine Father's current income and ignoring information presented by Father regarding his income at the September 24-25, 2020 trial. We disagree.

{¶ 78} In regard to child support, "income" consists of the sum of the gross income of the person and any "potential income" of the person if voluntarily underemployed. R.C. 3119.01(C)(9)(b). A trial court is permitted to impute income to a parent when the parent is voluntarily unemployed or voluntarily underemployed. R.C. 3119.01(C)(9)(b). This Court stated in *Farrell v. Farrell*, 5th Dist. Licking No. 2008-CA-0080, 009-Ohio-1341, ¶ 20: "In deciding if an individual is voluntarily under employed or unemployed, the court must determine not only whether the change was voluntary, but also whether it was made with due regard to obligor's income-producing abilities and his or her duty to provide for the continuing needs of the child. *Woloch v. Foster*, 98 Ohio App.3d 86, 649 N.E.2d 918 (1994). A trial court does so by weighing the circumstances of each particular case. *Rock v. Cabral*, 67 Ohio St.3d 108, 616 N.E.2d 218 (1993)."

{¶ 79} Pursuant to R.C. 3119.01(C)(17)(a), imputed income is determined from the following criteria:

> (i) The parent's prior employment experience;

> (ii) The parent's education;

> (iii) The parent's physical and mental disabilities, if any;

> (iv) The availability of employment in the geographic area in which the parent resides;

> (v) The prevailing wage and salary levels in the geographic area in which the parent resides;

> (vi) The parent's special skills and training;

> (vii) Whether there is evidence that the parent has the ability to earn the imputed income;

(viii) The age and special needs of the child for whom child support is being calculated under this section;

(ix) The parent's increased earning capacity because of experience;

(x) The parent's decreased earning capacity because of a felony conviction;

(xi) Any other relevant factor.

{¶ 80} Whether a person is voluntarily underemployed and the amount of income to be imputed "are matters to be determined by the trial court based upon the facts and circumstances of each case." *Rock v. Cabral*, 67 Ohio St.3d 108, 616 N.E.2d 218 (1993), paragraph one of the syllabus. A determination with respect to these matters will only be reversed upon a showing of abuse of discretion. *Id*.

**Evidence of Father's Income**

{¶ 81} Father testified he did not work for a while. Transcript of September 224-25, 2020 Trial (T). 199. Father also voluntarily sold his business in Hawaii in July 2019 and moved to Ohio. T. 192-193. Father's wife E.P. testified Father wasn't working at that time. T. 437. E.P testified Father's income from Island Metals for 2019 was $3,400 because "he didn't work much." T. 518.

{¶ 82} Father provided evidence that he had started a new business while in Ohio, Barns and Metal, LLC. But he also stated he would not take jobs more than 15 minutes away from his home. T. 202. Father presented Exhibit 63, a profit and loss sheet for Island Metals for January through November 2019 showing an "approximate net total" profit/income plus wages of $340,588.84; Exhibit 64, a profit and loss sheet for Barns and Metal for January through November 2020 showing net income of

$13,811.72; and Exhibit 65, which consisted of U.S. Bank statements for the Barns and Metal business checking account for April, May, June, July and August 2020. Father notably did not provide his tax records for 2018 and 2019. While Father alleged he paid a substantial amount of tax following the sale of Island Metals, he provided no tax documents to support his claims. T. 200. Father additionally did not provide evidence of his potential earning capabilities in Morrow County, however that information at this point would be moot as Father has since moved to Tennessee.

{¶ 83} Father had $347,442 in his U.S. Bank account as of September 20, 2019. T. 387, Mother's Exhibit M. Another $69,199 was deposited into the account in November 2019, bringing the total to $416,641. *Id.* But as of February 2020, the balance on the account was $2,297.

{¶ 84} The statements for the account are heavily redacted,[1] and therefore it is impossible to tell where the money went. E.P. testified they bought a house for $140,000 cash and spent $90,000 on renovations. T. 532. Thereafter they took a $220,000 mortgage out against the house. They later sold the house for $375,000. E.P. further testified contrary to the Barns and Metal profit and loss statement stating no one in their household earned income in 2020. Rather, they were living off the proceeds of the sale of Island Metals. T. 533.

{¶ 85} R.C. 3119.01(C)(7) states as follows regarding gross income for purposes of child support calculations:

---

[1] While Father alleges in his brief that a request to present unredacted copies was denied, the trial court specifically stated this was false; it never directed Father to redact his statements. T. 407-408.

"Gross income" means, except as excluded in division (C)(7) of this section, the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses to the extent described in division (D) of section 3119.05 of the Revised Code; commissions; royalties; tips; rents; dividends; severance pay; pensions; interest; trust income; annuities; social security benefits, including retirement, disability, and survivor benefits that are not means-tested; workers' compensation benefits; unemployment insurance benefits; disability insurance benefits; benefits that are not means-tested and that are received by and in the possession of the veteran who is the beneficiary for any service-connected disability under a program or law administered by the United States department of veterans' affairs or veterans' administration; spousal support actually received; and all other sources of income. * * *."

{¶ 86} We have recognized that "[t]he definitions of income under R.C. 3119.01 are broad and expansive to protect the child's best interests." *Cooper v. Cooper*, 5th Dist. Licking No. 14 CA 100, 2015-Ohio-4048, ¶ 30 quoting *Vonderhaar–Ketron v. Ketron*, 5th Dist. Fairfield No. 10 CA 22, 2010-Ohio-6593, ¶ 48, citing *Bishop v. Bishop*, 4th Dist. Scioto No. 03CA2908, 2004-Ohio-4643, ¶ 16 (additional citation omitted).

{¶ 87} There is no question that Father was voluntarily unemployed or underemployed in 2019 and 2020. Both Father and E.P. testified they did not work, or

worked very little. We therefore find no abuse of discretion in the trial court's determination of the same.

{¶ 88} We also find no abuse of discretion on the trial court's determination of Father's income. The trial court found that in 2019 and 2020, Father had access to more than $626,000 in cash either in wages, cash from the sale of his business, or from profit on his labor on the home he purchased and resold in Ohio. The trial court further found it would be highly prejudicial to Mother to reward Father for not working for two years leading up to his modification of child support hearing. In so finding, it left Father's previously determined income of $285,476.66 unchanged. Confirmation of Magistrate's Decision, August 23, 2021 at 6, 10. We find the trial court did not abuse its discretion in leaving Father's income determination unchanged.

### "Judicial Notice" of Historical Facts

{¶ 89} Father next argues that because the relevant time period for the trial court's consideration of child support was March 14, 2019 (date of last judgment entry concerning child support) to September 24-25, 2020 (the date of trial), the trial court erred in considering testimony and exhibits from a hearing held in 2018 in its August 23, 2021 confirmation of the magistrate's decision, specifically income previously imputed to Father. We disagree.

{¶ 90} First, in support of his argument, Father cites *Kuntz v. Ferrato*, 9th Dist. Medina No. 11CA0102M, 2012-Ohio-4873 and *In re LoDico*, 5th Dist. Stark No. 2003-

CA-00446, 2005-Ohio-172. Neither of these cases are on point or of any assistance to Father's position.

{¶ 91} In *Kuntz,* the magistrate ordered appellant Kuntz to submit to regular drug testing and have the results submitted to the GAL and the court's confidential file. *Kuntz* at ¶ 4. When upon objections by Ferrato the trial court considered Kuntz's drug testing results, Kuntz argued on appeal that trial court abused its discretion in considering facts not within the trial transcript in reaching its decision. In rejecting this argument, the Ninth District Court of Appeals concluded:

> There are other documents in the record, including magistrate's orders, which support the statements made by the trial court. Mr. Kuntz has not explained why the trial court should not be able to rely on this information when reciting the history of the case, when determining whether prior orders have been complied with, or when determining whether a party's story has changed. See *In re J.C.*, 186 Ohio App.3d 243, 927 N.E.2d 69, 2010-Ohio-637, ¶ 14 (9th Dist.), quoting *In re LoDico*, 5th Dist. No.2003-CA-00446, 2005-Ohio-172, ¶ 94 ("A trial court 'may only take judicial notice of prior proceedings in the immediate case.' "). We note that Mr. Kuntz has not asserted that the trial court's statements are inaccurate. Further, Mr. Kuntz has not asserted on appeal that he should have been given the opportunity to be heard on this issue, see Evid.R. 201(E), nor did he attempt to raise the issue below.

{¶ 92} Father also relies on *In re LoDico*, 5th Dist. Stark No. 2003-CA-00446, 2005-Ohio-172 for the premise that the trial court could not look to the history of the case in establishing Father's income. The portion of *LoDico* relied upon by Father involved a finding of contempt wherein the trial court relied on "other acts" of contempt by the appellant which did not occur in the presence of the trial court judge, and which were not made part of the court's record. Nothing similar took place in this matter. What is more, in that matter we concluded other acts committed before the same tribunal in the past by the same person could have been considered:

> As previously noted, to constitute direct contempt subject to a summary finding and disposition, the offending conduct must occur in the presence of the court and must pose an "imminent threat to the administration of justice." Acts occurring in the past, under different circumstances, and before a different tribunal would not be germane to whether the accused's conduct in this case, before this judge constituted a direct, summary contempt. However if the past acts had occurred in the presence of the same judge consideration of those past transgressions would not be foreclosed.

{¶ 93} *In re LoDico*, 5th Dist. Stark No. 2003-CA-00446, 2005-Ohio-172, ¶ 95.

{¶ 94} We have reviewed the portions of the August 23, 2020 judgment entry cited by Father, specifically findings 10 and 11. In these findings, the trial court was merely setting forth the history of the case. Like the appellant in *Kuntz*, Father fails to explain why the trial court may not rely on other documents contained in the record when reciting the

history of the case. He further does not argue the statements are inaccurate. We question whether the trial court even took "judicial notice" of anything in this matter. Rather, the court recited the history of a case that has been in ongoing litigation since 2015.

{¶ 95} Father also has not been denied an opportunity to be heard. The last time the court determined Father's income was in 2018. At that time, the trial court set his annual income at $285,467 a year, a decision that Father did not appeal. In the instant matter Father asked the court to modify his child support obligation because he claimed to be earning less money. The issue placed before the court by Father required an analysis of Father's income past and present to determine if Father demonstrated warranting modification of the previous child support order. We find no error in the trial court's consideration of the history of the case including Father's previously determined income.

### Testimony Outside the Record

{¶ 96} Finally, Father argues the trial court's August 23, 2021 judgment entry considered testimony outside the record of the September 24-25, 2020 trial. Specifically, the fact that Father had moved to Tennessee and sold his home in Ohio that had a $220,000 mortgage on it for $375,000. But before issuing its August 23, 2021 judgment entry, the trial court remanded the matter to the magistrate specifically for this information. A hearing was held before the magistrate on June 18, 2020, in part to address that matter. As noted in our statement of facts, Father has failed to include a transcript of the June 18, 2020 hearing. When portions of the transcript necessary to resolve issues are not part of the record, the court of appeals must presume regularity in the proceedings below and affirm. *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 400 N.E.2d 384. We

therefore presume the regularity of that hearing and find no error in the trial court's consideration of this information.

{¶ 97} The first assignment of error is overruled.

II

{¶ 98} In his second assignment of error, Father argues the trial court erred in ruling on his November 30, 2020 motion to modify child support without a hearing. We disagree.

{¶ 99} "The due process rights to notice and hearing prior to a civil judgment are subject to waiver." *Matter of A.H.*, 11th Dist. No. 2019-G-0222, 2021-Ohio-4055, ¶ 14, citing *D. H. Overmyer Co., Inc., of Ohio v. Frick Co.*, 405 U.S. 174, 185, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972). Generally, the decision to conduct an evidentiary hearing is a matter within the discretion of the trial court. *Id*. at ¶ 15 citing *Kalbaugh v. Kalbaugh*, 9th Dist. Summit Nos. 29184, 29185, 29219, and Summit Nos. 29328, 2020-Ohio-3873, ¶ 24. Moreover, the failure to hold an evidentiary hearing may be deemed harmless error when the complaining party is not prejudiced. *Id*. citing *Brown v. Brown*, 2014-Ohio-2402, 14 N.E.3d 404, ¶ 51 (8th Dist.) (the "failure to conduct the hearing [before modifying a support obligation] does not constitute reversible error, unless the appellant demonstrates prejudice").

{¶ 100} In his brief Father argues he was deprived the opportunity to present evidence "which would have included his current income information." But Father's income had been determined just 14 days earlier in the magistrate's decision issued following the September 24-25, 2020 trial. Moreover, Father has not argued he suffered prejudice. In fact, Father's child support order was lowered in response to his motion. Thus even if it was error for the trial court to forgo a hearing on the matter, the error was harmless.

{¶ 101} The second assignment of error is overruled.

III

{¶ 102} In his third assignment of error, Father makes four separate arguments alleging the trial court abused its discretion and made an error of law in denying his motion for reallocation of parental rights and responsibilities.

{¶ 103} Father first argues he was unable to present testimony and video evidence of his process server serving Mother's husband T.M. at the children's soccer game which he argues would have changed the recommendation of the GAL as to his visitation schedule. Father next argues the trial court abused its discretion in analyzing his motion by referencing evidence outside the record, specifically future hearings, evidence, and events in its August 23, 2021 judgment entry. Third, Father argues the trial court erred and abused its discretion in finding he failed to meet his burden to show a change of circumstances. Finally, Father argues the trial court abused its discretion in its implementation of a phased return to reestablishing father's visitation with the GAL or some other court-appointed advocate determining when progression to the next phase would occur. According to Father, this role is the trial court's alone.

**Process Server Testimony and Video**

{¶ 104} Evidentiary rulings lie within the broad discretion of the trial court. *Krischbaum v. Dillon*, 58 Ohio St.3d 58, 66, 567 N.E.2d 1291 (1991). Evid.R. 103(A)(2) addresses an erroneous ruling on the exclusion of evidence and states: "Error may not be predicated upon a ruling which * * * excludes evidence unless a substantial right of the party is affected, and * * * the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked. Offer of proof is not necessary if evidence is excluded during cross-examination." If the party

claiming error is unable to establish that the trial court's ruling affects a substantial right, the error is deemed harmless; if the party is unable to proffer the substance of the excluded evidence, the error is deemed waived. *Campbell v. Johnson*, 87 Ohio App.3d 543, 551, 622 N.E.2d 717 (1993).

{¶ 105} There was considerable drama surrounding the matter of Father serving subpoenas upon T.M. and his oldest daughter through Mother. Father subpoenaed his daughter to testify regarding her diary when in fact the diary was inadmissible pursuant to R.C. 3109.04(B)(3), and additionally if Father wanted any input from any of his children, the appropriate route was an in-camera hearing with the children, the court, the GAL and counsel for the children. Service upon T.M. and daughter through Mother occurred at the children's soccer game. Father sought to call his process server to testify regarding T.M.'s reaction to being served in that environment and further to admit his video of the same. T. 177-178. Counsel for Mother objected to the testimony and video evidence as irrelevant and the trial court sustained the objection. T. 176, 181. Counsel for Father then proffered that the process server's testimony would prove it was T.M.'s aggressive behavior in reaction to being served at the soccer game that caused ill will between the children and Father rather than Father's decision to serve them at a school function. Counsel further argued T.M.'s aggressive behavior was relevant to the best interests factors. T. 177-180.

{¶ 106} We find no error in the trial court's exclusion of the testimony of the process server or the video of service. First, while Father argues "[t]his is not a case where 13 witnesses had already testified to the same issue * * *" the record reflects that three witnesses did. Father, T.M., and E.P. all testified regarding the circumstances regarding the service of process. T. 259-275, 321-327, 483-489. Second while Father argues he

was prejudiced in his ability to fully present his case because the GAL's recommendation for visitation changed based upon the service issues, testimony regarding the incidences was admitted. We therefore find Father was able to present the testimony he sought even without testimony of the process server or videos of the service. We find no abuse of discretion and reject Father's arguments.

**Father Did Not Meet His Burden to Demonstrate a Change of Circumstances**

{¶ 107} A trial court reviews a motion to reallocate parental rights and responsibilities under R.C . 3109.04(E)(1)(a) which states as follows:

> (E)(1)(a) The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
>
>  (i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.

(ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.

(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

{¶ 108} Therefore, in determining whether to make a modification, a trial court must consider (1) whether a change in circumstances has occurred, (2) whether a modification is in the child's best interest, and (3) whether the benefits that result from the change of environment outweigh any harm. As explained by this court in *Oyler v. Lancaster*, 5th Dist. Stark No. 2019CA00130, 2020-Ohio-758, ¶ 24:

R.C. 3109.04 does not define the concept of "change in circumstances." However, Ohio courts have held the phrase is intended to denote "an event, occurrence, or situation which has a material and adverse effect upon a child." *Wyss v. Wyss*, 3 Ohio App.3d 412, 445 N.E.2d 1153 (10th Dist.1982). Additionally, the change of circumstances must be "one of substance, not a slight or inconsequential change." *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997).

{¶ 109} "In determining whether a 'change' has occurred, a trial judge must have wide latitude in considering all the evidence, and the court's decision must not be reversed

absent an abuse of discretion." *In re A.P.*, 2d Dist. Montgomery No. 28023, 2019-Ohio-139, ¶ 23. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶ 110} Father argues the change in circumstances include Mother's refusal to comply with court orders. Specifically, Father lists denying Father parenting time, withholding information regarding dental appointments, and failing to read OFW messages.

{¶ 111} Mother stipulated she did not open or respond to the OFW messages contained in Father's Exhibit 12. T. 111. Father neither explains why this constitutes a change in circumstance, nor provides any authority to support such a finding, and we decline to find that it does.

{¶ 112} The same is true of Mother withholding information regarding dental appointments and her delay in advising Father of minor injuries sustained by the children. The only instance we find in the record of Mother failing to advise Father of dental appointments is Mother failing to advise Father that the children had a consult with an orthodontist. Mother explained because the treatment would be expensive she was undecided as to whether or not to move forward and therefore did not see the need share the fact of the consult with Father. T. 571-573. Similarly, Father was advised one of the children broke their wrist shortly after the incident took place. T. 570, Mother's Exhibit L, pages 64 and 63. Another child sustained a cut on his head that required staples. Mother did not advise Father of this injury. T. 140-144. However, nothing about any of these instances constitutes a change in circumstances pursuant to R.C. 3109.04.

{¶ 113} As for Father being denied parenting time, Father specifies he was denied parenting time on December 18 and 21, 2019 and spring break 2020. Our examination of the record reveals Father's visitation was suspended pending investigation in December 2019 due to an allegation by one of the children that Father had choked them during a visit. T. 567-570. As for spring break, Mother admitted there was confusion on her part regarding whose weekend it was and she had given Father the following weekend or two to make up for her error. T. 566-567. Again, nothing about these incidences demonstrates a change of circumstances under R.C. 3109.04.

{¶ 114} While Father argues the trial court modified his parenting time and therefore there must have been a change in circumstances, his parenting time was not modified due to a change in circumstances for the children. Rather, Father's parenting time was modified first because Father voluntarily agreed to suspend visitation before the September 24-25, 2020 trial because the oldest child was so upset with Father's decision to serve her through Mother as well as T.M at a soccer game in front of her peers. Second, the three oldest children advised their attorney before trial they desired to spend less time with Father due to Father's behavior. T. 40-43. Father's visitation was therefore to be reinstated slowly and under supervision and eventually return to Local Rule 2 visitation except for summer which would be one week per month.

{¶ 115} In summary, while Father presented evidence demonstrating a change in his own circumstances, he failed to meet his burden to show an event, occurrence, or situation which has a material and adverse effect upon the children which would warrant a change of circumstances. We therefore reject Father's arguments.

**Phased-In Return to Visitation Monitored by the GAL**

{¶ 116} Finally, Father argues the trial court abused its discretion by allocating authority to the GAL to implement the phased-in return to visitation and to determine the success or failure of each phase. According to Father, this role belongs to the trial court alone.

{¶ 117} In support of his argument, Father cites *Morrow v. Becker*, 2018-Ohio-3316, 118 N.E.3d 1077 (9th Dist.) In that matter, the trial court ordered reunification counseling through an independent agency. Father's parenting time was to be expanded as recommended by the reunification counselor, but there was no provision for periodic reviews. *Id.* ¶ 27. In the instant matter, there was no outside professional employed to facilitate Father's phased-in return to parenting time, but rather a GAL.

{¶ 118} As Father notes, the trial court's role is to determine the best interests of the children and fashion a parenting time order that reflects the same. R.C. 3109.12(B). A GAL is an individual appointed to assist a court in that determination. In performing this duty a GAL is an officer of the court, acting as an arm of the court. *Lovejoy v. Cuyahoga Cty. Dept. of Human Serv.*, 76 Ohio App.3d 514, 517, 602 N.E.2d 405 (1991), citing *Penn v. McMonagle*, 60 Ohio App.3d 149, 573 N.E.2d 1234 (1990). Father's reliance on *Morrow* is therefore misplaced.

{¶ 119} What is more, while Father argues no provision was made for periodic review, a GAL is required to, "[i]f necessary, request timely court reviews and judicial intervention in writing with notice to the parties or affected agencies[.]" Sup.R. 48.03(A)(6). The record reflects the GAL complied with this mandate by emailing the court and counsel for the parties when supervised Zoom visits with Father deteriorated due to Father's poor behavior, and Father's failure to pay the GAL's fees as ordered. Father's

Motion to Remove Guardian Ad Litem, June 11, 2021, R. 388, exhibits 1 and 2. While Father takes issue with email communication from the GAL to the court and counsel, email communications were appropriate here as the GAL in this matter is not an attorney and may not therefore file motions. Father's arguments are without merit.

{¶ 120} The third assignment of error is overruled.

IV

{¶ 121} Father next argues the trial court abused its discretion when it denied his motion to enforce sentence upon Mother for failure to purge her contempt. We disagree.

{¶ 122} A trial court's decision in a contempt proceeding is reviewed for an abuse of discretion. *In re A.N.*, 8th Dist. Cuyahoga No. 99744, 2013-Ohio-3816, at ¶ 8, citing *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d 10, 11, 417 N.E.2d 1249 (1981). An abuse of discretion implies the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 123} Father first mentions the apparent confusion regarding the time for the May 31, 2019 purge hearing discussed in our statement of facts, wherein counsel for the respective parties had different times for the hearing in their calendars. Any confusion or subsequent delay in holding the purge hearing, however, is of no consequence as the matter was ultimately addressed at the September 24-25, 2020 trial. So too Father's mention of whether or not the magistrate could enforce sentence at all due to the fact that the trial court never adopted the magistrate's finding of contempt is of no consequence as the magistrate ultimately concluded mother had met the purge conditions. Judgment Entry November 16, 2020.

{¶ 124} According to the magistrate's order issued April 12, 2019, in order to purge her contempt, Mother was required to (1) provide Father with a schedule of the children's

activities; (2) provide Father with the names of the children's medical providers and all non-emergency appointments; (3) use OFW for communication between the parties; and (4) permit the children unrestricted use of the cell phone purchased by Father for communication between him and the children.

{¶ 125} Mother testified both parties use TeamSnap, an application containing the children's sports activities schedule and any changes to that schedule. Mother did not feel the need to duplicate those notifications through OFW. T. 558-559. We further note the order of April 12, 2019 did not require Mother to communicate the children's activities through OFW, but rather merely to provide Father with a schedule.

{¶ 126} Mother's exhibits J and K are OFW messages which provide Father with the names of the children's medical providers. T. 559-560.

{¶ 127} Mother testified the children have access to the cell phone provided by Father and she does not restrict that access. T. 561. While Father argued at trial that he felt the phone was often turned off or low on battery, even it that were true, the children had access to the phone as ordered.

{¶ 128} Father's most strenuous arguments centered on Mother's alleged failure to use OFW for communication between the parties. Father's exhibit 12 contained OFW messages that Mother neither opened nor responded to. Mother stipulated to that fact. T. 111. These messages, however, represented approximately one-third of the total messages exchanged, the other two-thirds of which Mother opened and or responded to. T. 556, Mother's exhibit L.

{¶ 129} We have reviewed the entire record in this matter including the OFW messages admitted at trial.  We agree with the magistrate's assessment that Mother's decisions cannot be viewed in a vacuum and that many of the messages sent by Father

through OFW were unnecessary. These messages included attempts by Father to get Mother to defy court orders as to the exchange procedures when dropping off or picking up the children, requests for information regarding the children's activities that Father already had, and demands for Mother to provide certain clothing for the children for visits with Father when Father was not supporting his children financially. Mother's exhibit L.

{¶ 130} As Father notes, the trial court summarily overruled Father's objection to the magistrate's decision to deny Father's motion to enforce sentence against Mother without analysis. The trial court did however note the parties have been in constant litigation since 2015, the children have grown weary of the constant battle, father's behavior is not demonstrative of a parent who has his children's best interests in mind, and neither is that of his counsel. In fact the trial court concluded any change in circumstances which have had a material and adverse effect upon the children has been wrought by Father. Judgment Entry August 23, 2021 at Record 400. Moreover, as noted by the magistrate, it would be inequitable and not in the children's best interests to incarcerate Mother. *Id.* We therefore find the trial court did not abuse its discretion in denying Father's motion to enforce sentence for contempt for Mother's failure to purge.

{¶ 131} The fourth assignment of error is overruled.

IV

{¶ 132} In his final assignment of error Father argues the trial court abused its discretion by denying his motion for contempt against the GAL. We disagree.

{¶ 133} As noted above, Father has failed to provide a transcript of the June 18, 2021 hearing which addressed this matter. We therefore presume the regularity of that hearing and overrule Father's final assignment of error.

{¶ 134} The Judgment of the Morrow County Court of Common Pleas Juvenile Division is affirmed.

By Wise, Earle, P.J.

Wise, J., J. and

Delaney, J. concur.

EEW/rw

[Cite as *G.P. v. L.P.*, 2022-Ohio-1373.]